# D. A. J. Baker and Wife

*v.*

## John Kelley.

In proceedings under chapter 4 of the laws of 1862, *Held:* That 1st. The interest and costs due on delinquent taxes may be collected by the same proceedings authorized for the collection of the taxes. 2. The Auditor is authorized to make a deed to the purchaser at a tax sale before the time of redemption expires. 3. Sections 6 and 7 of said act cannot be sustained as a statute of limitations in actions of ejectment, nor can they be sustained as a condition upon which only a party may continue to enjoy his property or legal rights. 4. If the Legislature, by Sec. 2 of said act, intended to divest the owner of his property, and declare it forfeited to the State, they transcended the limit fixed to their power by the Constitution. A tax deed under said act is prima facie evidence of title in the grantee therein named.

The plaintiffs brought this action in the district court for Ramsey county, Sept. 2, 1864, to eject the defendant from certain lands in said county. The defense set up was a tax title under a tax sale made Feb. 12, 1863, under the act relating to such sales of the 11th of March, 1862. The tax deed was made and recorded, May 28, 1863. Trial was had, and the jury found a verdict for the defendant, upon which judgment was perfected. The plaintiffs sued out a writ of error, and removed the cause to this court. A sufficient statement of the case will be found in the opinion of the court.

Lorenzo Allis, for plaintiffs in error.

I. The said tax deed should not have been admitted in evidence, because :

Baker v. Kelley.

1.  Said deed on its face shows that said premises were sold, not only for unpaid taxes, but for the *penalty* on such unpaid taxes.

The only instance in which parties may be deprived of their property without due process of law, is that of the collection of taxes, which arises from the supreme necessity of the case.

But this exception is not extended to the *penalty* for the non-payment of taxes; it only applies to the tax itself. Government has summary power to collect its *taxes*, but when it undertakes to enforce a *penalty* for delinquency in the payment of such taxes, it must do so by due process of law.

The *reason* for summary proceedings in the collection of taxes—the supreme necessity of the case—has no application to the collection of the *penalty*, which is not the delinquent's share of the public burden, but a punishment inflicted on such delinquent for his failure to contribute his share to the public burden at the appointed time.

The Government undoubtedly should have power to possess itself of every one's share of the public expenses without delay, but there is no reason why the delinquencies of individuals in contributing their shares to these expenses, should be more summarily dealt with than their delinquencies in other respects. And so the courts hold. Blackwell on Tax Tit. pp. 41–42; see also, Chap. 1, Blackwell on Tax Titles, and authorities cited.

2.  The day of sale recited in the deed is not the day therefor appointed by the statute, and it does not appear that there was any postponement of the sale.

3.  It appears from the deed that the property therein described was sold as one parcel, which is a violation of Sec. 3 of the statute.

4.  The deed was made before the time of redemption expired, and hence is void.

5.  It must be shown that all the preliminary steps were taken to authorize the giving of a deed, before the deed itself

is admissible. The statute does not make the deed *prima facie* evidence of its recitals.

The power of the officer to sell and convey property for non-payment of taxes is a *special* statutory power and must be strictly pursued.

It must be shown that the officer has pursued his power, that it is a case for the exercise of his power, and that he has acted within and in accordance with his power, before the deed made under the power is admissible in evidence. Blackwell on Tax Titles, p. 45 *et seq.*, and authorities cited; see also Ibid. p. 84 *et seq.*, and authorities cited.

II. The plaintiff clearly had the right to assnme the burthen and prove that the preliminary steps to the giving of the deed had not been taken.

Clearly nothing passed by the deed unless all the steps specified by the statute had been taken. Government has the undoubted right to enforce the collection of taxes in a summary manner, and to make due provisions to this end. But these provisions must be pursued. It is the *operation* of these provisions when complied with, that divests the owner of his property. The naked deed of the officer is effectual for nothing. Nor is any act of the officer effectual for any purpose, except when made in pursuance of the law in the premises. It takes *all* the acts required by the statute to pass the title in such a case.

It is in fact the *operation* of the law which passes the title. Blackwell on Tax Titles, p. 45, *et seq.*

In all cases the acts prescribed by the statute must be done before the title passes.

Doubtless it is competent for the Legislature to make the naked deed of the officer *prima facie* evidence that all these acts have been done and thus shift the burden of proof on him who avers that they have not been done. But the Legislature can not make the naked deed of the officer *conclusive* evidence that all the acts prescribed by statute in the premises, have

been performed. In other words, the Legislature can not prevent a party in interest from showing that the acts prescribed by statute have not been performed, and hence that nothing has passed; that is, that the naked deed executed by the officer is in fact *no deed*.

In still other terms the Legislature can not provide a certain mode whereby a delinquent tax payer shall be divested of his property, and then by a rule of evidence divest him without such mode being pursued. Blackwell on Tax Titles, p. 99, *et seq.*, and authorities cited.

Nor can the Legislature reach the same end by a statute of limitations.

The statute of limitations is a statute of repose. Its object is to protect people *in* the possession and *enjoyment* of their rights. It is not a statute of *prescription* by which rights are acquired.

Hence when an action of ejectment is brought, the defendant, before he can invoke the statute of limitations in his behalf, must show that he is in possession under color of title. The statute does not run in favor of the naked trespasser.

Hence, when the defendant to an action of ejectment claims under a tax title, it must appear that he has such title to enable him to plead successfully the statute of limitations.

It must appear that his possession is under color of title else his plea of the statute of limitations will be ineffectual.

Whether, therefore, such defendant is in possession under color of title—whether he *has* a tax title—is a question necessarily open to investigation and proof, notwithstanding the statute of limitations is pleaded, and as a necessary prerequisite to determine whether or not such plea shall be heard at all.

The question, therefore, as to the validity of a tax title can not be evaded by a statute of limitation, where ejectment is brought by the original owner. Blackwell on Tax Titles, Chap. 39, and authorities cited; see especially Ibid. p. 671 *et*

*seq.; Groosbeck v. Seeley*, 13 Mich. American Law Reg. July, 1865, p. 572.

The offer of the plaintiff, which was rejected by the court, was in substance to prove that there was *no deed—no conveyance* to the defendant, that nothing had passed under the tax law to the defendant; in a word that the defendant was in possession *without* title or color of title and hence was a mere trespasser. Had the plaintiff been allowed to show this, the defendant's plea of the statute of limitations would have been wholly ineffectual.

The court then erred in excluding the evidence.

III. The plaintiff is a *femme covert*, and the statute of limitations did not run against her.

MORRIS LAMPREY, for defendant in error.

I. The Legislature of the State of Minnesota, by an act approved March 11, 1862, Laws of 1862, p. 35, Sec. 7, enacted an express and positive statute of limitations, or repose, in words as follows, to-wit:

"That any person or persons having or claiming any right, title or interest in or to any land or premises after a sale under the provisions of this act, adverse to the title or claim of the purchaser at any such tax sale, his heirs or assigns shall, within one year from the time of the recording of the tax deed for such premises, commence an action for the purpose of testing the validity of such sale, or be forever barred in the premises."

Section 5, of the same act, provides that " such deed shall vest in the grantee therein an absolute title both at law and equity, except in cases where the tax returned delinquent shall have been actually paid." Section 2, of the same act, provides that " such lands so unredeemed, and upon which such delinquent taxes remain in whole or in part unpaid, shall, at said last named date, Nov. 1, 1862, become forfeited to the

State." Section 99, of Sess. Laws of 1861, p. 30, provides as follows : "A tax deed shall be *prima facie* evidence in all cases of a legal and valid title in the party holding the same, or his assigns." See also Comp. Stat. 683, Sec. 66; Ib. 685, Sec. 80.

It appears from sections 5 and 9, of the act of March 11, 1862, that the certificate of sale could have been returned to the Auditor at any time after the sale, and thereupon a tax deed issued by him. And section 5 provides what such deeds shall contain. This act, in express terms, extends to and includes any and every person having or claiming any right or interest adverse to the claim of the purchaser at such sale. It cannot be denied that a *femme covert* is a person; nor is she under any disability from commencing an action at any time by reason of the marital relations, as she has done in this case. The masculine gender includes, in our statutes, females as well as males; and the word person includes bodies corporate and politic, as well as individuals. Comp. Stat. 114, Secs. 2, 11. A special statute must prevail over a prior general statute. A subsequent statute, making a different provision on the same subject, repeals the former statute. The latest expression of the legislative will must prevail. 10 Wend. 549; Bacon's Abr. tit. Stat. D; 11 Wend. 330; 4 Cow. 556; 21 Pick. 373; 9 Minn. 166.

The Legislature has the power to enact a law of evidence, and provide that a tax deed shall be *prima facie* evidence in all cases of a legal and valid title in the party holding the same. Blackwell on Tax Titles, p. 79 and cases cited; 19 Curtis Dec. 597; 2 Kernan, 541. As to penalty for non-payment of money when due, see 3 Minn. 339.

II. This statute of limitations was passed March 11, 1862. It provided for a sale of lands for delinquent taxes, to commence on the second Monday in January, 1863, and to be adjourned without further notice till all such forfeited lands should be sold. The tax deed in this case was not recorded

until May 28, 1863, and the year from that time allowed to commence an action in, did not expire till May 28, 1864. The period of limitation in this case was, therefore, practically, more than two years and two months. See Comp. Stat. p. 533, Secs. 7, 8, 9, 10, 11, 12; Ib. 532, Secs. 3, 4, 5, 6; Ib. 761, Sec. 88; 2 Pars. Conts. 341 *et seq*; 2 Bou. Law Dic. 50.

III. Statutes of Limitation are now regarded favorably in all courts of justice. They are " statutes of repose." Usually they are founded in a wise and salutary policy, and promote the ends of justice. It is said that prescription is a thing of policy, growing out of the experience of its necessity, and the time after which suits or actions shall be barred, has been from a remote antiquity, fixed by every nation, in virtue of that sovereignty by which it exercises its legislation over all persons and property within its jurisdiction.

These statutes establish that a certain lapse of time shall amount to evidence of a transfer of property, or the performance of a contract, rather than take away one or dispense with the other. In prescribing the evidence which shall be received in its courts, and in giving effect to that evidence, a State is clearly within the limits designated by the Constitution of the United States. The time and manner of their operation, the exceptions to them, and the acts from which the time limited shall begin to run, will generally depend upon the sound discretion of the Legislature, according to the nature of the titles, the situation of the country, and the emergency which leads to their enactment. Blackwell on Tax Titles, 563, 564; 13 Peters, 312; Angell on Limitations, Secs. 10, 22.

But it is urged upon the other side that it must be shown that all the preliminary steps were taken, that the land was regularly sold, and that the officer who executed the tax deed had authority to give it, or that the plaintiffs should be allowed to disprove the same. We think these positions are untenable, and are conclusively answered by the Supreme Court of Wis-

Baker v. Kelley.

consin, in 11 Wis. Rep. 432; Blackwell on Tax Titles, 567, 568, 576, 577; 9 Minn. 64.

IV.  The lapse of time given by statute for bringing an ejectment, not only bars the remedy, but extinguishes the right and vests a perfect title in the adverse holder. The statute limiting the time within which suits for the recovery of lands sold for taxes must be brought, begins to run from the time of the recording of the tax deed. . It is immaterial whether the sale and the deed be void or valid; it is sufficient that a sale has been made and the deed recorded, to bring the statute into activity, and after the lapse of the period limited, to entitle the purchaser, and those claiming under him, to its protection.  6 Wis. 597; 11 Ib., 432; 6 Ib., 442; 20 Johns., 33; 5 Wend., 30; 2 Black., 599, and cases cited; Decision of U. S. Circuit Court by Miller, Justice, June term, 1866, in case of *Anna T. E. Kirtland v. T. Williams*, not reported; Sess. Laws of 1862, Sec. 6, p. 35; 2 Greenl. Ev. Sec. 430, and cases cited; 13 Wis. 245; 15 Ib. 100; 17 Ib. 176; 2 Black. It was not necessary that the defendant should be in possession to avail himself of the statute of limitations.

V.  An entry under a deed from a tax collector, and possession of the lands described in the deed, is sufficient evidence of an adverse seizin under a statute of limitations. The courts have concurred, it is believed, without an exception, in defining " color of title " to be that which in appearance is title, but which in reality is no title.  They have equally concurred in attaching no importance to any ground of invalidity of an apparent or colorable title.  19 Curtis' Dec., 597; 18 How, U. S. Reps., 50, and cases cited; Ib., 137; 2 Wash. Real Pr. marg. p. 492, *et seq.*

VI.  The judgment below was correct, and should be affirmed.

*By the Court*—Wilson, Ch. J.—This is an action of ejectment, and the defense a tax title.  The defendant, to establish his defense, offered in evidence the tax deed, and rested.

The plaintiff thereupon offered to show that the lands described in the tax deed had not been advertised for sale by the auditor as required by the statute. The defendant objected to the reception of this evidence as incompetent and immaterial, as the suit had not been commenced within one year after the record of the tax deed. The objection was sustained by the court and the plaintiff's counsel excepted to the ruling. To the reception of the tax deed in evidence, the plaintiff's counsel also excepted. There was a verdict for the defendant. All of the proceedings were had under the law of 1862. Sections 1, 2, 5, 6, 7 and 9 of said act read as follows :

"Sec. 1. That all lands heretofore sold for taxes of the year 1859, and all previous years, and which lands have been purchased and are held by any city or county, or forfeited to the State, or where the certificates of tax sales of any such lands are held by any city or county of this state, or wherever any delinquent tax is now due any such city, county, or to the State, for the time aforesaid, shall be subject to be redeemed by the owner or owners of such lands by complying with the following terms and conditions, to-wit: By paying to the proper officer the amount of the delinquent taxes aforesaid, due and unpaid, with interest thereon at the rate of seven per cent. a year, and costs, on or before the 1st day of November, 1862. *Provided*, that all taxes assessed on such lands since January 1, 1859, shall be paid, with costs and interest.

"Sec. 2. That if any such tract or parcel of land or structure thereon, shall remain unredeemed, or such delinquent taxes shall remain unpaid on said 1st day of November, 1862, such lands so unredeemed, and upon which such delinquent taxes remain in whole or in part unpaid, shall, at said last named date, become forfeited to the State ; and it shall thereupon become the duty of the county auditor to advertise the same for sale, therein stating that such lands will be sold as forfeited to the State under the provisions of this act, and

the time and place of sale, which time shall be on the second Monday in January, 1863. The said notice shall be published once in each week for at least three weeks from the time of the first publication thereof, in some newspaper printed and published in his county, and if no newspaper be so printed in the county, then in a newspaper printed in an adjoining county, and if no newspaper be printed in an adjoining county, then in some newspaper printed and published at the seat of government of this State; such sale shall be publicly made at the office of the county auditor by the county treasurer, the auditor to act as clerk and to keep a record thereof.   *   *   *

"Sec. 5.   It shall be the duty of the County Auditor making such sale, or his successor in office, upon the production and return of the certificate of sale, to make, execute and deliver to the purchaser in such certificate named, or his assignee, a deed in fee simple for the premises so sold, embracing therein such description of the premises sold, in addition to that in the certificate, as may be necessary to describe or fully identify the premises so sold, and reciting in such deed, such sale, and the fact that said property is unredeemed; such deed shall vest in the grantee therein an absolute title, both at law and equity, except in cases where the tax returned delinquent shall have been actually paid.

"Sec. 6.   That any person owning, or claiming any right title or interest in or to any land or premises so to be sold under the provisions of this act, shall, on or before the day of the sale thereof, commence an action for the purpose of testing the validity of the assessment of the taxes thereon, or in any manner questioning the regularity or validity thereof, or otherwise asserting his right, interest or claim thereto, or be forever barred in the premises, except in cases where the tax returned delinquent shall have been actually paid, and the treasurer of the proper county may be made a defendant in any such action, and shall have power to defend the same.

"Sec. 7. That any person or persons, having or claiming any right, title or interest in or to any land or premises after a sale under the provisions of this act, adverse to the title or claim of the purchaser at any such tax sale, his heirs or assigns, shall, within one year from the time of the recording of the tax deed for such premises, commence an action for the purpose of testing the validity of such sale, or be forever barred in the premises. * * * *

" Sec. 9. That any tract or parcel so sold may be redeemed by the person who owned the same at the time of the forfeiture thereof, or his representatives or assigns, at any time within one year from the time of the sale thereof, upon paying to the treasurer of the county, for the use of the purchaser or his assignee, the amount for which such property sold, with interest on such amount from the day of sale to the time of redemption, at the rate of two per cent. per month; upon such redemption being made, the treasurer of the county shall give to the person redeeming a certificate thereof, which may be recorded in the office of the register of deeds of the proper county, and thereupon the same shall operate to defeat such tax deed so far as said redeemed premises are concerned, and the title acquired by such purchaser or his assignee under the certificate and deed shall revert to such redemptioner."

The tax deed recited that the lands were sold for the taxes due thereon, and "the penalty chargeable on the same." It will be observed by Secs. 1 and 2 of said act, that the "penalty" was interest on the amount of the tax at the rate of seven per cent. a year and costs." Our general tax law provides that a tax deed shall in all cases be *prima facie* evidence of a legal, valid title in the party holding the same.

The act of 1862, I think, must be read as supplementary to the general law, and not independent of it. The tax deed, therefore, offered in evidence, was *prima facie* evidence of a title in the defendant. It is urged, and has been held, that a "penalty" cannot be collected by the summary process au-

thorized for the collection of taxes.    I must admit my inability
to apreciate the force or conclusiveness of the arguments
urged to establish this position.    I can see no reason why the
interest and costs should not follow the tax and be collected
in the same manner.    There is an admitted necessity for the
prompt collection of the State revenue at the time fixed by
law; hence, as a matter of public policy, summary proceedings
in its collection are tolerated and authorized.    Now the inter-
est and costs exacted of delinquents only indemnify the State
for the delay and expense caused by the non-payment of taxes
when due, and do not add to the State's revenue.    If the State
must, for the time, bear this expense and resort to an action
in the courts for its collection, the public treasury would, in
most cases, be depleted rather than enriched by the attempt
to collect taxes of those who refuse willingly to bear their
proportion of the public burdens, and the intention of the
law authorizing summary proceedings for the collection of taxes
would be defeated.    The adoption of such a rule would encour-
age delinquency, and would be contrary to public policy.    The
same reason that exists for the summary collection of the tax,
exists for the summary collection of the costs or damages
caused by the delinquency.    If either is not paid the treasury
is equally affected, and public policy, therefore, justifies and
requires like summary proceedings in the collection of each.
The tax deed in this case being *prima facie* evidence of title
in the grantee therein named, it was incumbent on the person
attacking it to show affirmatively those matters which he in-
sists make it void.    The statute clearly authorizes the making
of the tax deed before the time of redemption expires.    No
argument could make this more clear than the language of
Secs. 5 and 9 of the act.

We now come to the principal question of this case—the
meaning of Secs. 6 and 7, of the act of 1862.    Either by these
sections, it is meant merely to *limit* the time within which an
action may be brought for the purpose of testing or questioning

the validity of the assessment or sale, or else to provide that if an action is not commenced within the time designated, the person claiming adversely to the tax title, (whom we designate the original owner,) shall be forever barred from testing or questioning, as plaintiff or defendant, the validity of such assessment or sale. We will examine the act in both points of view. In the first point of view it is a statute of limitations, in the second it is not. As a statute of limitations they may apply either to actions brought by a party in possession, or to actions in the nature of ejectment, brought by a party out of possession against a party in possession. It admits of great doubt whether these sections apply at all to the latter class of actions. Section 6 could never, and section 7 seldom, apply to such actions. Section 6 requires the action to be brought before the sale, and therefore before any adverse claimant under the tax sale could have or claim possession. Pending or subsequent to the decision of an action of ejectment brought by the claimant under the tax deed, such action would of course not be brought by the original owner. If section 7, therefore, applies at all to ejectment, it only limits the time within which such actions may be brought, in the few and exceptional cases where the claimant under the tax sale obtains possession without contest, and within one year after the record of the tax deed, denying such remedy in other cases. This section does not apply to actions brought against the original owner. But I am inclined to think that the natural and fair import of the language of these sections limits their application to owners or claimants in possession. An action of ejectment is not an action for the purpose of testing the validity of an assessment or sale, and it is a familiar principle that a statute of limitations should not be applied to cases not clearly within its provisions. Even cases within the reason but not within the words of a statute are not barred, but may be considered as omitted cases, which the Legislature did not deem proper to limit. *Hazel v. Shelby*, 11 Ill. 9 and 10; *Be-*

*dell v. Jenney,* 4 Gilman, Ill., 207–9. And when a law so summarily disposes of the rights and property of parties; not even excepting *femmes covert,* infants, or insane persons, the rules of statutory construction will not permit courts to extend its application further than the fair and usual meaning of the language requires. If the application of these sections is limited to actions brought by claimants in possession, then they have no bearing on the case. If intended to limit the time within which ejectment may be brought, let us see whether they can be sustained. Statutes of limitation act only on the remedy; they prescribe a period within which a right may be enforced, afterward withholding a remedy for reasons of private justice and public policy. It would encourage fraud, oppression and interminable litigation, to permit a party to delay a contest until it is probable that papers may be lost, facts forgotten, or witnesses dead. A limitation law is intended to prevent this, and such a law is uniformly held valid. But, if the Legislature, under color of a statute of limitations, should enact a law, the practical operation of which would be to deny a remedy, in all or many cases arising under it, there can be no doubt as to the invalidity of such enactment. Our constitution secures to every person "a certain remedy in the laws for all injuries or wrongs which he may suffer in his person, property or character." If this law required an action of ejectment to be brought within one year after the cause of action accrues, there would, perhaps, be some difference of opinion as to whether that would be such a denial of the remedy as is inhibited by the constitution; it would certainly be an advance towards that point. *Berry & Johnson v. Randall,* 4 Metcalf, Ky. Rep. 293, and cases cited. But it does not stop here. The year within which the action may be brought, commences to run, not from the time the cause of action accrues, but from an act done, the record of the tax deed; and the cause of action, (if this statute refers to ejectment) may not accrue for an indefinite period after such

act; it may accrue a month, a week, or a day before, or not until after the expiration of the year within which suit must be brought. Such a law is clearly in contravention of the constitution, as it must necessarily operate as a denial of a remedy in many, perhaps in a majority of cases. In the case under consideration, we have no evidence, nor have we any right to presume that the action was not commenced immediately after a cause of action in ejectment accrued. The plaintiff, so far as the record shows, may have been in the actual possession of the real estate in question, until within a week or even a day of the commencement of this suit. Statutes of limitation cannot deny a remedy, as we have seen, nor is that the intention of such statutes—they are rather intended to secure a full, fair, and impartial trial, and to withhold a remedy *after it is probable such trial cannot be had.* Every intendment must be in favor of the validity of a statute, but when it is clear that it denies "a certain remedy in the laws" to any person or class of persons, it cannot be sustained. However good the intention of the Legislature may have been in framing the law, it cannot be doubted but that the law in effect, if interpreted according to the defendant's view, takes away the remedy for the contest of these tax titles. If taxes of the year 1859, and previous years, are legal, they can be sustained without such stringent and arbitrary enactments; if illegal, their payment should not be and cannot be enforced. We have seen that the Legislature have not the right or power to deny a person a reasonable time within which to commence an action "for all injuries or wrongs which he may receive in his person, property, or character," and of course cannot make the commencement of the time within which such may be brought ante-date the injuries or wrongs complained of, which in ejectment is the unlawful taking and holding of the property. In such action the plaintiff complains of no injuries or wrongs prior to the date of the unlawful acts charged as the cause of action.

We shall attempt to show further on in this opinion—and, therefore, take it for granted here—that the Legislature can not *require* a person who is in the possession and uninterrupted enjoyment of his property, to commence an action for the purpose of vindicating his rights or silencing adverse claims thereto. It is for him alone to determine whether it is proper or necessary to bring such suit, and his determination or action in the premises cannot prejudice his right of action for any subsequent injuries or wrongs. Nor can the Legislature make his failure to do what they have no right to require, a bar to a suit which he has a right to bring. The language of the law will not admit of the construction that the original owner has a year, or any definite period, within which to commence suit after possession taken by the claimant under the tax deed, and we, therefore, conclude that as a statute of limitation, these sections of the act cannot be sustained in actions of this kind. But suppose it is intended by this law to require the original owner to commence an action within the time fixed or be forever barred from testing or questioning the validity of the assessment or sale? Is such a law sanctioned by the Constitution? We have seen that this law is intended to operate mostly, if not exclusively, on owners or claimants in possession, and that if intended as a limitation of the time within which ejectment may be brought, it is void. It may be admitted that it is competent for the Legislature to limit the time within which a party in possession may commence an action under our statutes to remove a cloud from his title, or silence an adverse claim, but that it may require him to bring such action as a condition to the enjoyment of his property in the enforcement or defense of his rights is quite a different thing. It is not necessary for a party in the enjoyment of his rights to institute any proceedings against an adverse claimant, and to require him to do so would be, in many cases, imposing a grievous and expensive burden. A law requiring a party to take such action is not, nor has it, any analogy to

a statute of limitation. Statutes of limitation only operate as an extinguishment of a remedy, and, of course, can have no application to a party who neither seeks nor needs a remedy. The Supreme Court of Michigan, in *Groosbeck v. Seely*, 13 Mich. R. 329, says:

"Limitation laws always must operate to compel a party to enforce or prosecute his claim within a reasonable time, but a party who is in the enjoyment of his rights cannot be compelled to take measures against an adverse claimant, and a law taking away the rights of a party in such cases is an unlawful confiscation, and in no sense a limitation law." This position is, I think, tenable. Property in our State is not held subject to the will or permission of the Legislature. The rights of property-holders are fixed and guarded by the organic law. By our Constitution, all lands within the State are declared allodial—every man's property is his own, absolutely and unqualifiedly, and he has the right to use and enjoy it according to his pleasure, injuring no other man, and he can be deprived of it only by the exercise of the power of taxation, or of eminent domain, or by due process of law. If there are any exceptions apparent or real to this rule, they have no bearing on this case, (whether properly taken by virtue of the power of taxation is taken by "due process of law," we do not consider.) It cannot be urged here that the plaintiff's land was sold for taxes, and that he has thus lost and the defendant acquired the title, for the principal error complained of in this case is, that the plaintiff was denied the right to disprove any legal tax sale. That the premises in question were taken under the power of eminent domain is not pretended. "Due process of law," without which, the Constitution declares no person shall be deprived of life, liberty or property, is not merely an act of the Legislature. Chancellor Kent says, 2 Com. (13,) "the better and larger definition of" due process of law "is that it means law in its regular course of administration through the courts of justice," and this is

now the well-settled meaning of this clause of our Constitution. Sedgwick on Cons. Law, 534; *Wyncham v. The People*, 13 N. Y. 392-3-4; Ib. 433; *Taylor v. Porter*, 4 Hill, 140; *Hoke v. Henderson*, 3 Dev. 12. In *Wyncham v. The People*, Comstock, J., says: "I am brought, therefore, to a more particular consideration of the limitations of power contained in the fundamental law. No member of the State shall be disfranchised or deprived of any of the rights or privileges secured to citizens thereof unless by the law of the land, or the judgment of his peers. No person shall be deprived of life, liberty or property, without due process of law, nor shall private property be taken for public use without just compensation, [the language of our own Constitution.] No doubt, it seems to me, can be admitted of the meaning of these provisions. To say, as has been suggested, that the "law of the land," or "due process of law," may mean the very act of the Legislature which deprives the citizen of his rights, privileges or property, leads to a simple absurdity. The Constitution would then mean that no person should be deprived of his property or rights unless the Legislature shall pass a law to effect the wrong, and this would be throwing the restraint entirely away. The true interpretation of these constitutional phrases is, that when rights are acquired by the citizen under the existing law, there is no power in any branch of the government to take them away; but when they are held contrary to the existing law, or are forfeited by its violation, then they may be taken from him—not by an act of the Legislature, but in a due administration of the law itself—before the judicial tribunals of the State. The cause or occasion for depriving a citizen of his supposed rights, must be found in the law as it is, or at least it cannot be *created* by a legislative act, which aims at their destruction." Seldon, J., in the same case, says: "To give this clause [of the Constitution above referred to] therefore, any value, it must be understood to mean that no person shall be deprived by any form

of legislative or governmental action of either life, liberty or property, except as the consequence of some judicial proceedings appropriately and legally conducted. It follows that a law which, by its own inherent force, extinguishes rights of property or compels their extinction without any legal proceedings whatever, comes directly in conflict with the Constitution."

That the plaintiff was the owner of the land and authorized to prosecute and defend in the courts, his rights thereto, is admitted. That he has been deprived of either his property, or legal rights, by that due process of law which "proceeds upon inquiry, and renders judgment after trial," cannot be pretended. If the statute should be sustained, it would effect this; for a person is deprived of his property and legal rights when he is forbidden to test or question the validity of the title of an adverse claimant. The statute would deprive a person of his property if he fails to do an act which may be done or omitted without any violation of law, and which neither his duty or interest requires him to do, and makes the performance of such act a condition to his rights to sue for or defend his property in the courts; whereas the constitution declares that he shall not be deprived of his property by any mere legislative act, and that he shall be entitled to "justice freely and without purchase, completely and without denial, promptly and without delay, conformably to the laws." There can be no difference in principle between requiring a party to bring a suit, pay a sum of money, or do any other act as a condition to a status in court, or the enjoyment of his property. That justice is not "*free*" and "*without purchase*," within either the spirit or letter of the constitution, which can only be obtained on either condition. We do not mean to question the power of the Legislature to require a party to pay the necessary costs of litigation, or to prescribe rules for the guidance of courts and litigants, but it seems very clear that beyond this they cannot attach any conditions or limits

Baker v. Kelley.

to the rights that are guaranteed absolutely, unconditionally, freely, and certainly, by the constitution. In attempting to do this, the law of 1862 is in conflict with the provision of the constitution which we have cited, and it cannot therefore be sustained. See *Green v. Briggs*, 1 Curtis C. C. R. 311; *Weller v. City of St. Paul*, 5 Minn. 95–101. It will be observed that our constitution guards property with the same care that it does life and liberty. If the plaintiff can be deprived of his property for the act or omission complained of, so he could of his life or liberty. Thus far, no reference has been made to the position that the Legislature, by section 2 of said act, divested the plaintiff of his title to the property, and declared it forfeited to the State; and the views which have been above expressed, and authorities cited, so fully cover this point that a mere reference to it now is only necessary. Few questions are better settled, than that the Legislature cannot thus deprive a person of his property or rights. If the Legislature by this section attempted to do more than confer on the State the power to take such further steps as were necessary in the collection of the delinquent taxes, or in the perfection of tax titles, then it overstepped the limits which the constitution has fixed to its authority. These views necessarily lead to the conclusion that the plaintiff had a right to show that either the assessment or sale was invalid, and the ruling of the court refusing to admit such evidence was erroneous.

The judgment below is reversed, and cause remanded.