(11 Misc. Rep. 502.)

TURNER v. BOYCE.

(Supreme Court, Special Term, Clinton County. February, 1895.)

1. TAXATION—ASSESSMENT OF OCCUPIED LANDS—VALIDITY.
    An assessment, as nonresident, of land actually occupied, is void.

2. SAME—SALE—TAXES ASSESSED ON OTHER LAND.
    A sale of land for taxes, part of which were assessed on another parcel, is void.

3. SAME—CURATIVE STATUTE.
    An assessment, as nonresident, of land actually occupied, and a sale for taxes, part of which were assessed against another parcel, are jurisdictional defects, and are not cured by a statute which provides that the tax deed shall be conclusive evidence of the regularity of the proceedings after two years have elapsed since the time it was recorded.

4. SAME—OCCUPIED LANDS.
    Laws 1885, c. 448, providing that a tax deed shall be conclusive evidence of title after two years from its record, does not apply to a deed of land actually occupied, where the deed was recorded in violation of Laws 1855, c. 427, § 68.

**5. SAME—REMEDY AGAINST STATE.**
    Laws 1885, c. 448, limiting the time within which land sold for taxes
    may be redeemed, does not apply where the state is purchaser, as no au-
    thority is given for proceeding against the state.

Action by Martin V. B. Turner against Scott G. Boyce to recover
damages for cutting timber on plaintiff's land.    Judgment for plain-
tiff.

John P. Kellas, for plaintiff.
McCleary & Paddock, for defendant.

KELLOGG, J.    No contention is made over the title of the plaintiff
to the land on which the timber was cut (lot 86 in the town of Bel-
mont), except the northwest quarter;  that is to say, defendant con-
cedes that plaintiff should recover unless defendant's title to the
land is paramount to plaintiff's title.    The only question, therefore,
relates to defendant's title, or the title of his partner, William W.
Wheeler.    The deed to Wheeler is the ordinary quitclaim of the
state, signed by the governor, under resolution of the land office,
and dated June 21, 1894.    The only title then possessed by the state
was such as was acquired through the tax sale of 1877, and through
what was done by the comptroller at the tax sales of 1881 and 1885.
The tax sale of 1877 clearly conveyed no title to the state, for two
reasons:

First. The land was assessed as nonresident during all the years
in which taxes were levied for which sale was made, while in fact
during all those years it was occupied by a resident occupant.    The
assessment was therefore void, and cannot furnish support for a
sale.    This proposition requires no argument.    Joslyn v. Rockwell,
128 N. Y. 334, 28 N. E. 604;  Stewart v. Crysler, 100 N. Y. 378, 3
N. E. 471;  People v. Wemple, 117 N. Y. 77, 22 N. E. 761.

Second. The assessment for 1862 and tax levied that year were
upon the east half of the lot only.    The tax upon the southwest
quarter had been paid.    Notwithstanding this fact, the comptroller
undertook to sell the southwest quarter in 1877 for the unpaid taxes
on the east half.    It hardly needs argument to show that such a
sale is unauthorized.    If such a sale could be held valid, it would
result in taking from the owner of the southwest quarter his land
for a tax never levied thereon,—a clear violation of the constitu-
tional provision against taking property without due process of law.
The fact that taxes of other years on the southwest quarter were
unpaid, and the sale of 1877 included those also, does not cure this
fatal defect.    The fact remains that the sale was made to discharge
a burden never imposed.    There is no way open to the owner of
this southwest quarter by which he could obtain relief upon dis-
charging the actual tax burden upon his land after the sale.    The
redemption of a "specific part" of an entire tract, provided by section
53 of chapter 427 of Laws of 1855, can be made by the person claim-
ing such part only in one way, and that is "by paying  *  *  *
such proportion of the purchase money and interest as his quantity of
acres shall bear to the whole quantity of acres sold."    The whole
scheme of taxation and collection of taxes is based upon plain,

sound principles.  It cannot be reasoned from any language of the law, or by any implication to be drawn from such language, that parcels of land separately assessed and separately taxed may be bunched with other parcels and sold in lump.  Much less does the law authorize such a sale where it is apparent that such a sale makes one parcel stand for the taxes levied only upon other parcels. Section 44 of chapter 427 of Laws of 1855 provides in plain terms the duty of the comptroller at a tax sale.  He "shall commence the sale of such lands and shall continue the same from day to day until so much of each parcel so assessed shall be sold as will be sufficient to pay the taxes, interest and charges thereon."  A sale of several parcels which have been separately assessed in one lump lot permits the purchaser who will take the smallest acreage and pay the tax upon all to take that part of the whole lump owned by A. to pay taxes on the parcels owned by B.  This is not in accordance with the section last quoted, nor in accordance with any provision of the law governing sales that I have been able to discover.

In People v. Hagadorn, 104 N. Y. 521, 10 N. E. 891, it is said:

"It is an elementary rule that public officers exercising the right of selling the property of the citizen by statutory authority are required to pursue the requirements of the statute strictly."

And, again, at page 524, 104 N. Y., and page 891, 10 N. E.:

"Under our scheme of taxation, the tax for each year is separately levied and returned to the comptroller, and he is under no legal obligation in making a sale of land to join the taxes of different years, or to sell for the aggregate sum of all the taxes due for separate years, upon such land.  The necessary effect of such a joinder of taxes is therefore to make the payment of an illegal tax the condition of the owner's right to retain his property and subject him, contrary to the meaning and spirit of this statute, to the payment of an unjust and illegal exaction as the price of his legal right to redeem his property.  * * * There can be no division of the sum payable, and no separation which can validate a part and reject the rest.  It is either wholly bad or altogether good."

The court held it wholly bad.

It also appears that, for the year 1870, the northeast corner of this lot and the south half were separately assessed.  The tax levied on the northeast corner (160 acres) was $4.53, and on the south half (320 acres) $11.35, and at the sale of 1877 the land was sold as one parcel for the aggregate tax.  Thus, each parcel, at different valuations per acre, was made to stand the tax levied upon the other.  For the reasons I have before given, I think this was an error fatal to the sale.  It is a violation of the plain principle that one man's land cannot be sold to pay the taxes upon another's, or, which is the same thing, one parcel of land cannot be sold to discharge a tax upon another parcel, no matter how small that tax may be.

We next come to the question as to the effect of chapter 448 of the Laws of 1885 upon the sale of 1877 and the deed given pursuant thereto.  As a curative statute, obviously, it can have no effect. The defects pointed out are not irregularities simply; they are in the highest sense jurisdictional.  Joslyn v. Rockwell, 128 N. Y. 334, 28 N. E. 604.  It cannot be denied that the legislature has full power over the subject of taxation and the collection of taxes, and

may adopt any method of assessment and collection which gives to the taxpayer an opportunity to be heard, and which does not necessarily come in conflict with the constitutional provision against taking property without due process of law; but, when the legislature has by law established its method, the taxpayer has a right to rely upon its being strictly pursued in all its material provisions. And while the legislature may at any time validate a tax by a curative law as to irregularities which might have been dispensed with in the first instance, had the law so provided, yet the legislature has not the power to validate a sale by a retrospective act unless the assessment and sale were made in conformity with the material requirements of the existing law. This is a sound distinction, and is supported by ample authority. Cromwell v. MacLean, 123 N. Y. 489, 25 N. E. 932.

If the law of 1885 can be of any avail to defendant, it must be because of the limitation therein provided upon plaintiff's right to point out the fatal defects named, and which make the sale of 1877 and the deed to the state void; in other words, because the deed to the state must be accepted in the court as conclusive evidence of title. This is the claim which counsel for defendant urges. For several reasons, I do not think the claim well founded.

1. The act of 1885 does not apply to deeds of lands "any part of which are actually occupied at the time of the expiration of the two years given for the redemption thereof," which deeds have been recorded in violation of the provisions of section 68, c. 427, Laws of 1855, and the deed to the state referred to was so recorded. Certainly, the actual occupant, if he be the owner or the agent of the owner, has a right to rely upon this express provision of the law: that no record of any deed will be made until he has received actual notice. The recording act has no application by way of making the record constructive notice to him; and, so long as the law prohibits the recording, he is not required to keep constant watch of the county records to ascertain if there has been a breach of the law. I do not think the legislature, in fixing the period of two years, and making a deed recorded that length of time conclusive evidence of title, meant in this law to embrace deeds of occupied lands recorded in violation of that prohibitory statute, for the effect would be to nullify that statute. This the legislature could not have intended, for the prohibitory section is re-enacted in section 14 of chapter 711 of the Laws of 1893, the time being changed to one year after notice. If this prohibition upon the record of deeds is not to have a beneficial effect in favor of occupied lands, then any deed may be recorded as soon as received from the comptroller, and the two-years limitation be immediately started. At the end of two years, while the occupant has been waiting for the notice the law says he shall have, the deed becomes conclusive evidence of title. I do not think this is the intention of the legislature. It is impossible to give effect to both statutes without interpreting them to mean that the limiting statute of 1885 gives to the owner of occupied lands two years after a deed is recorded in conformity with the provisions of the law touching the recording of deeds obtained

at tax sales; and the two-years limitation cannot begin to run at the instance of the purchaser until after service of the notice upon the occupant, as provided by section 68, c. 427, Laws 1855, or as re-enacted in section 14, c. 711, Laws 1893, and thereafter recording such deed. It is no injustice to the purchaser to require that he conform strictly to the law if he is to be permitted to take through the law houses and lands to which he is in no way entitled, on any principle of right or justice, and which he gets only through a law which permits him to close the mouth of and strangle the rightful owner.

2. The plaintiff and his grantors were at the time of the passage of the law of 1885, and during the six months therein limited, in the actual possession of the land, and in the unrestricted enjoyment of all the rights touching the land as owner, and, being so, the statute as one of limitation could not apply. In the assertion of what right was he limited? How could the legislature take his land from him by enacting that, if he remained peaceably in possession and enjoyment of his land, he should lose it? A statute of limitations, as commonly understood, is a time limit to the enforcement of a latent or dormant right. If not enforced within the time fixed, it is counted as abandoned. But what dormant right was the plaintiff here called upon to actively enforce? His possession and title were perfect, and he was in full enjoyment of every right. He claimed nothing which he did not possess. Is he, at the instance of the legislature, to put on his armor, and go in search of some mythical enemy, and attack all windmills within six months, on pain of a forfeiture of his property rights? The limitation might properly apply to those claiming rights, and kept out of possession or enjoyment. The claimants, through these deeds to the state, might be properly made objects of a limitation act, for they obviously have something to do before they can reach the enjoyment of the rights they claim, but to apply a limitation to the plaintiff is a reversal of the accepted office of such an act.

In Joslyn v. Rockwell, 128 N. Y. 339, 28 N. E. 604, Justice Peckham says:

"It is claimed that one in possession of all his rights cannot be compelled to resort to legal proceedings, or else run the risk of losing them. The question does not arise in this case. * * * There is very weighty authority for holding such a statute in the case of one in possession to be invalid."

And so, indeed, there is. Abell v. Harris, 11 Gill & J. 371; Cooley, Const. Lim. (3d Ed.) 366; Groesbeck v. Seeley, 13 Mich. 329; Case v. Dean, 16 Mich. 12; Baker v. Kelley, 11 Minn. 495 (Gil. 358); Hill v. Lund, 13 Minn. 451 (Gil. 419); Feller v. Clark, 36 Minn. 338, 31 N. W. 175; Dingey v. Paxton, 60 Miss. 1038; Spurlock v. Dougherty, 81 Mo. 171; Daniels v. Case, 45 Fed. 843; Land Trust v. Hoffman, 6 C. C. A. 358, 57 Fed. 333. All the cases here referred to hold the same doctrine, and put in the language of Mitchell, J., in Feller v. Clark, supra, is as follows:

"The legislature cannot require a person in the uninterrupted enjoyment of his own property to commence an action for the purpose of vindicating his right against some void claim existing merely on paper, or declare that

by his failure to do so the title to his property shall vest in the holder of that void claim."

3. The sale of 1877 and the deed having been to the state, the provisions of the law of 1885 cannot be invoked in its aid in this action, either as a law of limitation or as a rule of evidence. The reason for this would seem apparent upon a bare statement of the proposition. This deed was recorded in June, 1882, and had been three years of record at the time the law of 1885 went into effect. By that law six months was given in such cases to the landowner to take legal proceedings to have the deed declared invalid; or else thereafter it should be taken as conclusively valid and as a conveyance of an unimpeachable title. No provision is made in this law or any other by which any action or proceeding could be taken against the state, and without the consent of the state no such action or proceeding could be taken. Locke v. State, 140 N. Y. 480, 35 N. E. 1076; Parmenter v. State, 135 N. Y. 163, 31 N. E. 1035.

In Parmenter v. State, supra, Peckham, J., says:

"Between citizens the courts are at all times open, and each can at any time resort to some legal forum for the enforcement or protection of his claim or right as against any other citizen. It is different in regard to the state. Unless with its consent, it cannot be sued. The counsel for the state concedes, what would also seem quite plain, that, if there never had been any tribunal created by the state before which the claimant could have pressed his claim, the statute of limitations would not have commenced to run, because it would have been absurd to hold there was a statute of limitations within which a claim must be sued when there had been neither a person to be sued nor any court or tribunal before which the state could be summoned to answer the suit."

The right to take action or proceedings against the state must be express, and does not arise by implication. Locke v. State, 140 N. Y. 480, 35 N. E. 1076. It cannot be claimed that any such consent was given by the act of 1885. Such a consent is not even hinted at in People v. Turner, 117 N. Y. 227, 22 N. E. 1022. The taxpayer, as landowner, could not apply to the comptroller to set aside this sale, or to in any manner test the validity of the sale or deed. This has been repeatedly held. People v. Chapin, 104 N. Y. 369, 5 N. E. 64, and 11 N. E. 383; Ostrander v. Darling, 127 N. Y. 70, 27 N. E. 353; People v. Wemple, 138 N. Y. 582, 34 N. E. 386; People v. Roberts, 144 N. Y. 234, 39 N. E. 85.

The only intimation that the taxpayer had such right which can be found in any of the books is found in the dictum of Ruger, J., in People v. Turner, 117 N. Y. 239, 22 N. E. 1022, when he says:

"But more than this, after the tax had been returned to the comptroller, the taxpayer has still the right, both before and after the sale of his property, to appear before that officer, and make proof of any illegality in the tax levy, and demand that such tax and any sale made thereon shall be canceled by him."

It cannot be that the court here meant to reverse itself or set aside its decision in People v. Chapin, supra, where the question was directly at issue; and, if it did so mean, the law must be taken as it now stands, as declared in Ostrander v. Darling and People v. Wemple, supra, which are later decisions, and distinctly hold that a taxpayer has no such right, and never did have. The plaintiff

and his grantors were, then, during the six months after the passage of the law of 1885, wholly without a tribunal or court in which to test the validity of the sale or deed made to the state.   By what process of reasoning, then, can the conclusion be reached that they were guilty of laches?   They were simply required by the law of 1885, if it can be held to apply here, to do a conceded impossibility, and, failing, they were to be stripped of their possessions.   Surely, the taking of the taxpayer's property in such a case would not be a taking "by due process of law."

The taxpayer is no better off with this six months' limitation than were taxpayers under the Westchester county law (chapter 627, Laws of 1887), respecting which Peckham, J., uses this forcible language (Cromwell v. MacLean, 123 N. Y. 489, 25 N. E. 932):

"Has the legislature of this state the right to take the property of A., and transfer it to B., under the guise of confirming sales made of such land in invitum, but by which no title, in fact or in law, passed from the owner to the purchaser? The statement of the question should be its best answer. Property thus taken is not taken by due process of law."

We next come to the deeds to the state, dated one in 1884 and one in 1890.   These were made to the state, pursuant to section 66, c. 402, Laws 1881.   They profess to convey to the state the land in question, and were both recorded without notice to the occupant, and are both, in this respect, on the same footing as the deed hereinbefore referred to, given pursuant to the sale of 1877; and both deeds are subject to all the other defects named touching the deed following the sale of 1877.   But these two deeds are also valueless as grants of any right or title to the land in them described, for the reason that no sale in fact was made by the comptroller to the state of these lands at the time a pretended sale is referred to in them.   The comptroller, at the tax sales of 1881 and 1885, did not in fact sell these lands, but followed the injunction of the law referred to (section 66, c. 402, Laws 1881) respecting lands "belonging to the state," and refused to receive bids therefor.   I do not think that the legislature ever supposed that any one would be misled into the belief that a deed made in accordance with its injunctions in this section created a title in the state or mended any.   It is only as to lands already belonging to the state that the comptroller is authorized to refuse bids.   To such lands the state needs no new or additional grant.   If the state did not already own them, the state, to get title, must compete with other bidders.   So the intention of the legislature is apparent.   It was merely intended to withdraw such lands from the sale.   Deeding to the state under such circumstances, while an authorized form, made such deeds only evidence that the state paid the tax because of previous ownership.   Obviously, to give such deeds the character and force of independent grants would be to hold that the state is not prohibited by the constitution from taking the property of the citizen without compensation or without due process of law.   The owner of the land is deprived of his right to have his land go to the person who will take the smallest quantity, and pay the tax, saving to himself the portion not required to pay the tax.   As to the lands already owned by the

state, the provisions of this section harm no one; but as to lands not in fact owned by the state, the state has no power to obtain title in this way, nor does this section presume to confer such power. Judgment for plaintiff.