18 Misc. Rep. 646.)

### ANDRUS et al. v. WHEELER.

(Supreme Court, Trial Term, Franklin County. May, 1896.)

1. PUBLIC LANDS—GRANT BY STATE—COLLATERAL ATTACK.
   Letters patent, issued by the state, of lands to which it has no title, may be set aside in an action by the rightful owner against the holder of the patent.
2. QUIETING TITLE—PLEADING—AVERMENT OF POSSESSION.
   An allegation that plaintiff is the owner in fee simple of unoccupied lands is a sufficient averment of his possession thereof, in an action to quiet title.
3. TAX TITLES—SALE IN SEPARATE PARCELS.
   An objection to the validity of a tax title, on the ground that the lands were not sold in separate parcels, can be made only by the person whose title is foreclosed by such sale, or one claiming under him.
4. SAME—ERRORS CURED BY SUBSEQUENT SALE.
   A void tax sale of land to the state is not cured by a subsequent sale to the state, under Laws 1881, c. 402, § 66, authorizing the comptroller to bid in for the state at tax sales of lands belonging to it, rejecting all other bids.

Action by Albert E. Andrus and Mary R. Robinson against William W. Wheeler, to set aside letters patent of lands issued by the state to defendant. Judgment for plaintiffs.

The comptroller of the state of New York, in pursuance of the state tax sales of 1866 and 1871, conveyed by two deeds, one bearing date December 17, 1868, and the other, February 2, 1874, the southeast quarter of lot 87, township 8, old military tract, Franklin county, to Albert Andrus. Albert Andrus thereafter died, and the interest thus acquired by him is now claimed by the plaintiffs. In 1877 the west half of lot 87 was sold for unpaid taxes, and bid off by the comptroller for the state, and conveyed to the people June 9, 1881. In 1881, lot 87 was sold for the unpaid taxes of 1871 to 1876, inclusive. At this sale, upon the assumption that the entire lot then belonged to the state, all bids were rejected by the comptroller, and it was bid off by him for the state, and conveyed to the people October 21, 1884. In 1885 the lot was again sold for unpaid taxes of 1887 to 1880, inclusive. At this sale the comptroller, again acting upon the assumption that the entire lot belonged to the state, rejected all bids therefor, and bid it off for the state, and it was conveyed to the people February 15, 1890. The east half of the lot, except 65 acres, was in 1890 again sold for unpaid taxes for the years 1882 and 1883, and bid off by the comptroller for the state, he again rejecting all other bids. No conveyance appears to have been made by the comptroller to the people in pursuance of this sale. On the 21st of June, 1894, in pursuance of a resolution of the commissioners of the land office, all of lot 87 was sold to the defendant, and letters patent then issued to him. And, in December following, in pursuance of a similar resolution, the lot was again sold to the defendant, and letters patent issued. The plaintiffs bring this action for the purpose of having the patents thus issued by the state to the defendant, so far as the same affect the title to the southeast quarter of lot 87, canceled, set aside, and adjudged to be null and void. The subject-matter of the controversy is a wild lot, and is not in the actual possession of either of the parties to the action.

Cantwell & Cantwell, for plaintiffs.
John P. Kellas, for defendant.

McLAUGHLIN, J.   The defendant contests the right of the plaintiffs to maintain this action at all:   (1) Because it is to vacate and set aside an act of the state,—letters patent; (2) because a determination cannot be had affecting the validity of the instruments in question without the presence of the people as a party; (3) because there is no allegation in the complaint that the plaintiffs are in possession.

The first objection is a novel one, to say the least.   That the state can, without any authority, issue to B. letters patent of land owned by A., and that A. cannot contest the validity of the same because they were issued by the state, is a proposition which it could hardly be expected would receive the sanction of any court.   The constitution of the state guaranties that one shall not be deprived of his property except by "due process of law," and, if his property be taken from him in any other manner than that sanctioned by the laws of the state, the courts heretofore have acted, and doubtless will continue to act, whether it be taken by the state or by an individual.   If the people are necessary parties to the action, and the defendant desired to raise that question, he should have done so by demurrer or answer (Code Civ. Proc. §§ 484, 494); and, not having thus raised it, it is waived.   The plaintiffs allege that they are "the owners in fee simple," and this is a sufficient allegation of possession.   Gage v. Kaufman, 133 U. S. 474, 10 Sup. Ct. 406.   Possession is presumed to follow the legal title, and, where the land is unoccupied, an allegation that the plaintiffs have the legal title is a sufficient allegation of their possession to enable them to maintain an action to remove

a cloud from their title.  Beach, Mod. Eq. Jur. par. 559.  The cases, cited by the defendant, to the effect that one must be in the actual possession, are not applicable.  The decisions in these cases were all rendered under section 1638, Code Civ. Proc., and prior to the amendment of 1891.  Before this amendment actual possession was required.

This leads to the consideration of the main and more difficult question involved, and that is, whether Albert Andrus ever acquired the legal title to the lot in question, and, if so, whether it was thereafter forfeited to and acquired by the state.  It is conceded that the comptroller conveyed to Albert Andrus the premises in question by the two deeds bearing date September 17, 1868, and February 2, 1874, respectively; but it is strenuously urged that both deeds were insufficient to, and did not, by reason of certain fatal irregularities in the tax sales in pursuance of which they were given, vest in him any title whatever.  The irregularities pointed out are:  That, in the 1866 sale the east half, and in the 1871 sale the northwest quarter and southeast quarter, of lot 87, were offered and bid off by plaintiff's testator as one parcel.  But this would not, of itself, prevent Andrus getting good title as against the state.  The owners of the different parcels of the lot undoubtedly had the right to insist that each parcel should be sold separately for the tax due thereon; but it does not appear, however, that any owner ever insisted upon such disposition, or ever objected to the manner in which the sale was made.  On the contrary, it does appear that the owner of the northeast quarter, Sylvester Jones, redeemed the northeast quarter from the sale of 1866 by paying to the comptroller the amount of the tax assessed thereon, and that Andrus only received a deed of the southeast quarter.  The state received the total amount of tax assessed upon both quarters, Jones retained the land owned by him, and no one, so far as appears, was injured in any way, unless it be Andrus; and he, having accepted a deed of the southeast quarter in satisfaction of the bid made by him, thereby ratified and confirmed the act of the state in selling in the manner in which it did.  The same conclusion is also reached as to the 1871 sale, and as to this sale it is to be observed that the northwest quarter and the southeast quarter of the lot were in fact assessed as one parcel for at least two years for which the sale was made.  But how is the defendant in a position to claim anything based upon irregularities of these sales? It is a fundamental principle of the law that one cannot take advantage of his own wrong, or profit by his own illegal act; and this principle is as binding upon the state as upon an individual.  If these sales were illegal, it was by reason of some act of the state over which the plaintiff's testator had no control, and thereafter neither the state nor any person subsequently acquiring title from it could be permitted to take advantage of the illegality, if one existed, for the sake of defeating a title based upon such sales.  But, in any view, the sales of 1866 and 1871 were valid and sufficient to, and did, vest legal title in Albert Andrus, as to all persons except the then owners of the parcels sold, or some person deriving his title from, or connecting it in some way with, the then owners.  The

then owners of the different parcels, as we have already seen, either did not object to, or waived, the irregularities complained of. An owner of property may waive the protection which the constitution gives to him in reference to it, and, if he does waive it, no one can be thereafter heard to say that such waiver was illegal. Vose v. Cockcroft, 44 N. Y. 415; Detmold v. Drake, 46 N. Y. 318; Connors v. People, 50 N. Y. 240; Wheeler v. Houston, 52 N. Y. 641. As was said by Ruger, C. J. (People v. Turner, 117 N. Y. 227, 22 N. E. 1022):

"It is a matter of grave doubt whether a stranger, not being in possession of or claiming title to the property taken, can raise the question that it has been illegally taken from another. * * * A stranger cannot be a person aggrieved in such a case, and comes within the general rule of law that only those having a legal interest in the subject of the action can litigate the validity of the title thereto in legal proceedings."

It follows, therefore, that the legal title to the premises in question was acquired by plaintiff's testator. Has that title since been forfeited to or acquired by the state? I think not. In each and all of the tax sales made since plaintiff's testator acquired his title, and through which the state acquired its alleged title, occur jurisdictional defects of such a nature as to make the sales void. Turner v. Boyce, 11 Misc. Rep. 502, 33 N. Y. Supp. 433. In view of the learned opinion in the case just cited, in which the illegalities of the sales referred to are clearly pointed out, an extended discussion here is unnecessary. At the 1881 sale, the state, upon the assumption that it then owned all of lot 87, rejected all bids therefor, and the whole lot was bid off by the comptroller for the state. The state did not then own the east half of lot 87. It did, however, own the west half, and it was the duty of the comptroller, under the statutes then in force, to reject all bids on that portion of the lot; but, as to the east half, he could not legally reject bids, neither could the state become a purchaser, except by entering into competition with other bidders; and, not having done this, the sale of the east half to the state constitutes a serious jurisdictional defect, and which is not cured by the statutes of 1885 or 1893. Joslyn v. Rockwell, 128 N. Y. 334, 28 N. E. 604. The invalidity of the deed given to the state in pursuance of the 1881 sale was not cured by the subsequent sale of 1885 or 1890, when the comptroller again went through the form of bidding in the whole lot for the state, rejecting all other bids. That these sales were illegal, and insufficient to pass any title whatever, is very clearly stated by the learned justice writing the opinion in Turner v. Boyce, supra. He says:

"But these two deeds are also valueless, as grants of any right or title to the land in them described, for the reason that no sale in fact was made by the comptroller to the state of these lands at the time a pretended sale is referred to in them. The comptroller, at the tax sales of 1881 and 1885, did not in fact sell these lands, but followed the injunction of the law referred to (section 66, c. 402, Laws 1881) respecting lands 'belonging to the state,' and refused to receive bids therefor. I do not think that the legislature ever supposed that any one would be misled into the belief that a deed made in accordance with its injunctions in this section created a title in the state or mended any. It is only to lands already belonging to the state that the comptroller is authorized to refuse bids. To such lands the state needs no new or additional grant. If the state did not already own them, the state, to get title, must compete with other

bidders. So the intention of the legislature is apparent. It was merely intended to withdraw such lands from the sale. Deeding to the state, under such circumstances, while an authorized form, made such deeds only evidence that the state paid the tax because of previous ownership. Obviously, to give such deeds the character and force of independent grants would be to hold that the state is not prohibited by the constitution from taking the property of the citizen without compensation, or without due process of law. The owner of the land is deprived of his right to have his land go to the person who will take the smallest quantity and pay the tax, saving to himself the portion not required to pay the tax. As to the lands already owned by the state, the provisions of this section harm no one; but, as to lands not in fact owned by the state, the state has no power to obtain title in this way, nor does this section presume to confer such power."

The plaintiffs are entitled to judgment.