## PATRICK VS. DAVIS.

Although a collector execute, deliver, and acknowledge, to a purchaser of land at tax sale, a deed containing recitals of every pre-requisite prescribed by the statute, yet, if the land was misdescribed in the advertisement of the tax sale, the owner is not divested of his title and estate in the land.

### Appeal from St. Francis Circuit Court.

Hon. CHARLES W. ADAMS, Circuit Judge.

PIKE & CUMMINS, for the appellant. We submit that the purchaser, at a tax sale, cannot be disturbed by reason of any irregularity here alleged: that the sheriff's deed is conclusive. Secs. 112, 113, ch. 139, Rev. Stat.; Pillow vs. Roberts, 7 Ark. 822; Newton vs. State Bank, 14 Ark.

Mr. Justice SCOTT delivered the opinion of the Court.

In opening and examining this record, we were forcibly and very favorably impressed with the lawyer-like manner in which this case was gotten up, and is presented for our decision by the united professional skill of the learned court and counsel.

It was an action of ejectment by Patrick, who claimed the land in controversy, under sheriff's deed, made on a sale for taxes against Davis, the patentee and owner. The cause was tried and determined upon the general issue, (before the Hon. CHARLES W. ADAMS, Judge,) in the St. Francis Circuit Court, the parties having waived a trial by jury, and requested the court to find the facts as on special verdict, which was done.

From this, it appears, that the lands were patented to the defendant, Davis, who has held possession of them ever since. That, up to the 24th of December, 1850, he was a non-resident of the

State of Arkansas. That, in the year 1849, the lands were regu-
larly listed for taxation in his name, and the State and county
taxes duly assessed upon them in the county of St. Francis, where
they are situated. That the taxes, so assessed, not having been
paid, the collector attempted to advertise these lands for sale in
pursuance of the statute, but described them as being situated in
range number three *east*, instead of three *west*, their true descrip-
tion. In other respects, the advertisement conformed to the pro-
visions of the statute. That the defendant had a resident agent
in St. Francis county, authorized to pay the taxes in question,
who, in due season, before the lands were advertised, applied to
the collector to pay them, but was informed by that officer that
the lands had been omitted to be listed and assessed for that year,
and would be double taxed the ensuing year. That afterwards,
when this advertisement appeared, this agent again called on the
collector, and pointing out the mistake, was informed by that
officer, that for the reason of this error the lands would not be
offered for sale as advertised; and, in consequence, the agent did
not attend the sale. That, nevertheless, at the time and place
advertised, the collector did offer the lands described in the
patents, and so misdescribed in his advertisement, and the plain-
tiff became the purchaser at the price set out in the deeds. That,
in pursuance of that sale, the plaintiff received the usual certifi-
cate of purchase for the lands correctly described, kept them for
a period beyond one year, and then, upon presenting them to the
collector, received in exchange deeds for the lands in controversy;
which are set out *in hæc verba*, and were duly acknowledged and
recorded. These deeds do not in any way exhibit the misdescrip-
tion of the lands in the advertisement; but, on the contrary, re-
cite, among other things, that the collector "did proceed to ad-
vertise, and give at least thirty days' previous notice, according
to law, that he would sell, &c., the said tracts of land," &c., the
lands having been correctly described in a previous recital con-
tained in the deeds. It also was found that the defendant owned
no other lands, in St. Francis county, than those described in his

patents and in the declaration, and that he was in the possession of them at the time of the service of the writ. Upon this state of facts, the court being of opinion that the law was for the defendant—to which opinion the plaintiff excepted, and took his bill of exceptions—the finding, as upon special verdict, was in accordance with this opinion of the court. And final judgment having been rendered upon this finding for the defendant, the plaintiff appealed to this court.

The appellant's counsel submit that, under our revenue laws, it was the intention of the Legislature to place the validity of tax sales upon the same footing with execution sales under the authority of the Circuit Court; and that inasmuch as, in the latter class of cases, the want of actual advertisement, when returned by the sheriff as having been made, (*Newton vs. The State Bank*, 14 *Ark. R.* 9,) cannot be urged against an innocent purchaser, the only redress in either case should be through a proceeding against the officer for any damage which may have resulted from his negligence.

It has long been the prevailing doctrine, as was remarked in the case of *Merrick & Fenno vs. Hutt*, decided at the present term, that to divest the owner of his title and estate in lands, by a sale for taxes, it is necessary that it should be shown that every substantial step, prescribed by the statute, had preceded the sale. This was the principle of law recognized and applied by this court, in the case of *Hogins vs. Brashears*, 13 *Ark. R.* 242, and which had been almost universally recognized both in the Federal and in the State Courts. So much so, that it cannot but be presumed, that it was within the knowledge of the Legislature, at the time of the enactment of our revenue laws. Indeed, some of the provisions of these laws indicate that they were enacted in direct reference to a recognition of this doctrine. Thus, in the warrant to be attached to the tax books, the form of which is prescribed, (*Digest, ch.* 139, *sec.* 40,) if taxes are not paid within ten days after being demanded, the collector is affirmatively "commanded to levy and make the same, or the part remaining unpaid,

with costs, in the manner and by the proceedings prescribed by
law," &c., and the same mandate is negatively repeated in the
provisions of the 48th section, that this levy and sale shall be
made in the same manner as under judgments and executions at
law, "when not inconsistent with the provisions of this act." And
then the further provision is made in the 113*th section*, that no
exceptions shall be taken to any deed, which, by other regula-
tions, is to contain a recital of these proceedings, " but such as
shall apply to the real merits of the case, and are consistent with
a fair interpretation of the intention of the General Assembly."
Indicating, when taken together, not only a recognition of the
doctrine in question, but enacting a modification of it, on a point
where the drift of the decisions of the courts had practically made
it objectionable, by the double error of a too ready ear to trivial
matters of non-conformity to the statute, and the failure to dis-
criminate between those matters, which are really conditions
precedent to the validity of the sale, and those which are direc-
tory merely, and designed for the information of the officers and
to promote method, system and uniformity, in the mode of pro-
ceeding.    And in the same category may be included that capi-
tal provision of the statute, according with the legislation of seve-
ral of the States, which, when the deed is regular upon its face,
reverses the *onus probandi*, and subjects the tax title, when thus
sustained, to be overthrown, only by proof of a non-conformity
in the proceedings to some one of the substantial prerequisites to
the sale.

True, the Legislature had equal authority to abolish the doc-
trine in question as to modify it; but it would only be that char-
acter of modification which would be inconsistent with the doc-
trine itself, that would work its abolition by implication, in the
absence of express legislation.

If this doctrine rested upon the simple ground, that the power
in question was a naked power — not coupled with an interest,
then there would be more room, both for question as to its sound-
ness, and for plausibility in the position assumed for the appel-

lant; because, in this respect, it does not perhaps differ at all from the sheriff's power, when selling land under execution from the Circuit Court; but it rests upon a much wider and more solid legal basis. Not only is it, in its nature, a special and limited power, but its operation is penal, in a summary manner, out of the cause of the common law, and against common right, and there are, therefore, at least three concurring, though distinct, legal reasons, why it should be strictly pursued. Such a power is as much a special one, as that vested in militia officers and courts-marshal, to enforce the performance of military duty; and the obligations of the citizen to pay taxes and render military services, grow out of the same political contract. It is created by the statute, and the mode of its exercise specifically pointed out in a course different from that of the common law. It provides the resident tax payer no day in court upon the important question, whether or not he has neglected or refused to pay within ten days after demand; and it is upon this only that he can be put in default, and that the right to levy upon and sell his land, arises. It is, therefore, strongly against common right. If his land is sold, it is not because any court has adjudged him in default, but because a ministerial officer, in the double capacity of judge and witness, has passed upon his case *ex parte*.

If, as against a purchaser, at a collector's sale, all inquiry is cut off as to the advertisement, and the injured party turned over to the officer for redress, upon the principle contended for, the like would be the result as to the fact of refusal to pay within the ten days after demand, and as to all the other acts *in pais*. And if this rule is to prevail, it would seem that the collector's bond, unless greatly enlarged in amount beyond double the sum of the State and county taxes, would be a very inadequate security for the land owners of a county, against all of whose lands he would annually have process of execution; while the sheriff would not perhaps have like process against an equal quantity of land within a half century.

Such a power, as that defined for the collector of taxes by the

current of authority, lives only in the authoritative acts prescribed to be done by him—the power to do the succeeding act arising from his having authoritatively done the preceding one. When, therefore, one of these acts is omitted, the chain of his power is broken, and he having no general authority to invoke, to sustain any subsequent act, it is necessarily without power.

Not so, however, with the power of a sheriff, when selling land under a valid execution, issued from a Circuit Court upon a subsisting unsatisfied judgment of that court; because his power lives not only in his acts prescribed to be done by the statute, but in the judgment and execution concurrent with the statutory regulations for its exercise. These regulations prescribe the form of the process of execution, and the mode in which execution shall be done, and, in doing so, recognize and authenticate, at the same time, that they, to some degree, extend the inherent constitutional power of the Circuit Court to execute its own judgments. When, therefore, in doing execution, a sheriff should deviate from the mode prescribed by the statute, although to this extent the proceedings would be erroneous, there could not be any absolute defect of power, because his act would still be within the scope of the general constitutional powers of the court under whose authority he acts. Not unlike some of the acts of an executor, which, although not in conformity to the provisions of the statute regulating his duties, would nevertheless be upheld, because of his authority being derived from the testator and living in his will, although the statute prescribes the mode of its probate, the form of the grant of letters testamentary, and makes regulations for his representative action. These provisions of the statute being but in recognition and authentication of the power conferred by the will, the exercise of which they also regulate.

But, however well or ill-founded in legal reason this doctrine may be, it was too well established by the almost uniform current of decisions to have escaped the notice of the Legislature; and if it had been the intention to overturn it by our revenue laws, instead of simply modifying it on those points, where its

practical operation had pressed most severely against the validity of sales, it is fair to presume there would have been a far more distinct intimation of the legislative will to this effect, than can be gathered from any fair construction of the various provisions made.    Indeed, some of these strongly indicate the contrary, as those made by the 91st and 92d sections of the law, which, after providing that the deeds for lands of residents sold for taxes shall be executed and acknowledged in the same manner as deeds are made for lands sold under execution, enacts that "such deed shall vest in the grantee, his heirs and assigns, a good and valid title, both in law and equity, and shall be evidence of the legality and regularity of the sale of such land, until the contrary be made to appear."    *Sec.* 92.    So, also, the 113*th section* provides that, "No exception shall be taken to any deed made by the collector for lands sold for taxes, but such as shall apply to the real merits of the case, and are consistent with a fair and liberal interpretation of the intention of the General Assembly."    While the provisions, as to sheriff's deeds for land sold under execution, are simply that when acknowledged, or proved, and recorded, they shall be evidence, without further proof, (*Digest, ch.* 67, *sec.* 64,) and that the recitals contained in them, shall be evidence of the facts recited, (*id., sec.* 60,) without further verbiage.    Although this discrepancy may have no very strong legal bearing, it may, nevertheless, be regarded as one of the signs, by which the true intention of the Legislature, as to the doctrine in question, may be arrived at.    The principal evil of the doctrine, as it originally stood, was the difficulty, amounting almost to impracticability after the lapse of a few years, of the purchaser establishing, by proof, the various acts *in pais* of the collector, upon which the validity of his deed depended.    That has been remedied in our revenue laws, by the provisions of the 92*d* and 112*th sections*, making the deeds, when regular upon their face, evidence of the regularity of the proceedings, and thus casting the *onus probandi* upon the party who questions the validity of the sale.    Another evil was, that the invalidity of the sale was often declared, upon grounds of

47ᴮᴮ

trivial nonconformity of the proceedings to the provisions of the law, which in no way touched the real merits of the case. For this, the 113*th section* provides a remedy, in the provision that such objections shall not be allowed.

The objection in the case before us — which is substantially, as is in effect conceded by the counsel, a failure to advertise the lands for sale — makes it necessary that we should ascertain whether this nonconformity with the provisions of the statute, requiring that the lands should be advertised, is cured by the last cited section of the revenue law.

It may be stated, as a reasonable proposition, that all those provisions of the statute, which are mere regulations of business, designed for the information of the assessors and collectors, the county court, and the auditor, in the routine of their respective duties, touching the revenue, and intended to promote method, system and uniformity, in the mode of proceeding, the noncompliance with which can, in no respect, injuriously affect the individual rights or interest of the tax-paying citizen, cannot be said to touch the merits of any case he may make against the validity of a sale of his lands for taxes. Whereas, all those provisions, which are intended, or which may be of a character to operate practically, for his protection, security or benefit, the noncompliance with which would consequently be likely so to affect such rights or interest, would, without doubt, be of the merits of such a case. The former class of regulations may be, therefore, well regarded as purely directory, the noncompliance with which, although subjecting the recusant officer to legal animadversion, would not invalidate the sale; while the latter class may, with equal reason, be regarded as conditions precedent to the legality and validity of the sale. It was to enforce this plain, and, to some extent recognized, distinction, (*Torry vs. Millbury,* 21 *Pick. R.* 67; *Brainard et al. vs. Con. River Rail Road Co.,* 7 *Cush. R.* 505,) and to suppress the mischief which had resulted from its having been too often overlooked, doubtless, that our Legislature

enacted the 113th section, and which disallows objections for non conformity of the former class.

From this exposition of the law, it is plain that the objection in question is fatal. The advertisement, required by the Legislature, had too capital objects in view. 1st, To apprise the owner of the property; and 2d, To give notice to persons desirous of purchasing. Both objects are of importance. It is necessary for the interest of the owner, that he should be informed of a proceeding, which, unless arrested by the payment of the tax, would divest him of his property. And it was of equal, if not greater importance, that the property should be so accurately and definitely described that no purchaser could be at a loss to ascertain its situation and estimate its value. In the case of *Roukendorff vs. Taylor's Lessee*, 4 *Peters R.* 373, it was held that although all this information should be given to the purchaser at the sale, "yet the sale would be void unless the same information had been communicated to the public in the notice. Its defects, if any exist in the description of the property to be sold, cannot be cured by any communication made to bidders, on the day of the sale, by the auctioneer." In all the cases we have examined, where the question has arisen, it has been uniformly held, that a misdescription of the land in the advertisement, is fatal. And, in this State, there is an additional reason, that it should be so held, in the fact, that under our laws, lands may be as well assessed, taxed, and sold in the name of a stranger, as in that of the true owner. *Revenue Law*, sec. 115.

Besides this fatal objection, facts were found in this case strongly tending to show fraud in the officer making this sale.

The judgment will be affirmed.