THE BLAIR TOWN LOT AND LAND CO. v. SCOTT ET AL.

1. **Tax Deed**: DESCRIPTION: EVIDENCE. Where the certificate of sale and tax deed describe land having no necessary identity with that which has been taxed and upon which taxes are delinquent, they do not of themselves constitute sufficient evidence of sale to uphold the tax deed, but rather negative it.

2. ———: ———: RULE APPLIED. The tract was listed as "in S. E. S. W. Sec. 2, Tp. 83, R. 24—15 acres," while in the certificate and deed it was described as "15 acres in the S. side S. E. quarter of the S. W. quarter of Sec. 2, Tp. 83, R. 24:" *Held*, that the two descriptions did not necessarily contemplate the same parcel, and that in the absence of evidence *aliunde* showing them to be the same, no right was acquired by the purchaser either under the sale or deed.

   *Argument 1.* The deed is not conclusive upon the purchaser that the land described therein was actually sold.

   *Argument 2.* The description is void for uncertainty.

3. ———: ———: BURDEN OF PROOF. Where the assessment fails to designate any specific property, without the aid of extrinsic proof, the party claiming a right under such assessment must furnish the extrinsic proof.

*Appeal from Story District Court.*

THURSDAY, OCTOBER 5.

THIS action was brought November 4, 1873, to set aside a tax deed made to the defendant, John Scott, and his conveyance of the same land to William O. Wright. John R. Hayes, the auditor, and E. G. Day, the treasurer, of Story county, are also made defendants. The deeds are asked to be set aside because the land therein described was not sold, but another description of land than that conveyed was sold; and also because of the fraudulent practices of the defendants in the sale thereof. The plaintiff also avers that the land was redeemed from the sale within the time allowed by law, and that by the fraud of the officers the redemption was not entered of record. The defendants deny the allegations of the petition and aver that the description by which the land was sold, and also the description by which it was conveyed are sufficient. The defendants deny all fraud, and also deny

that any redemption was made from said sale. The cause was tried to the court by the first method, upon depositions, and judgment was rendered for the defendants. The further facts appear in the opinion. The plaintiff appeals.

*E. S. Bailey* and *N. M. Hubbard*, for appellant.

*Clark & Moulton*, for appellees.

COLE, J.—The land in controversy, it is claimed, was sold to the defendant, John Scott, October 7, 1870, for the delinquent taxes of 1869, amounting to $23.75. The land was entered on the tax list as "in S. E. S. W. Sec. 2, Tp. 83, R. 24—15 acres." The deed purports to convey "15 acres in S. side S. E. quarter of the S. W. quarter of Sec. 2, Tp. 83, North of Range 24, West." The certificate of purchase had been altered by the erasure in front of the description S. E. S. W. Sec. 2, etc., and the words "in S. side" had been written in over the erasure.

The plaintiff acquired its title to the property in controversy by conveyance from John I. Blair. And it was the owner of about sixty-four acres of land in that quarter section, the remaining portions of the land having been laid off into town lots and for right of way of the C. R. & M. R. R. In December, 1872, the plaintiff sent its agent to Nevada, in Story county, for the purpose of paying the taxes of 1872, and of redeeming from sale the land in controversy and other lands. He left with the auditor the following description of land, to-wit: "The west one-half and south part of southwest quarter of Sec. 2, Tp. 83, R. 24—about sixty-four acres, west and south of Ames for 1869," and stated that he wished to redeem the same from sale, and requested the auditor to make out a certificate of redemption and the tax receipts for taxes upon other lands, and he would go on West to pay taxes in other counties and return in a few days and pay the amount. Accordingly they were made out and he returned and paid the amount specified in, and took with him, the certificate and tax receipts. Upon the list or description left with the auditor, he had noted these words, "forty A sold," and the cer-

tificate of redemption described the land as follows, "S. W. ¼ Sec. 2, Tp. 83, R. 24–40 acres;" and the auditor told said agent that that land was all which was sold in the 64 acres described in his list. On October 3, 1873, the defendant, John Scott, met P. E. Hall, an officer of the plaintiff, and Scott testifies that Hall then spoke to him about the intention of the plaintiff to lay off the land in controversy in town lots should the railroad from the south be completed to Ames. And he says further: "I did not mention to him that I had a tax certificate on the land, but with more or less vividness it came to my mind at the time that I did hold one." On October 16, 1873, the defendant, Scott, obtained a tax deed containing the description "fifteen acres in the S. side S. E. quarter of the S. W. quarter of Sec. 2, Tp. 83, North of Range 24, West." On October 25, the plaintiff was advised by letter of the fact of Scott's claim, which was the first intimation that it had had in any way that the records did not show the redemption or that redemption in fact had not been made. The plaintiff's same agent was sent immediately to Nevada, and there met Mr. Scott and told him that there was a mistake about the matter, for the agent was positive that he had himself made the redemption and had a redemption certificate covering said land. He also requested that no sale of the land be made or deed executed until he could examine further into the matter. He then tendered to said Scott an amount more than sufficient to redeem the land from said sale, which was refused. On November 4, and probably after the action had been commenced, a deed for the premises from Scott to W. O. Wright was filed for record. Scott testifies that the consideration named in the deed, $1,500, was paid by said Wright, who is his brother-in-law, and who resided at Freeport, Illinois, by said Wright's check on the bank sent to him by mail, payable in thirty or sixty days; that he paid the check to his wife for money advanced to him, and he had no personal knowledge of what she did with it. The evidence shows the value of the land to be about four or five hundred dollars per acre—one witness says a fair cash value in November, 1873, was about $5,000. There is no evidence of any

actual fraud or improper motive on the part of the auditor or treasurer.

These are the facts of the case, stated with as much brevity and perspicuity as is practicable. It will be seen that the land which was listed, and upon which the taxes were delinquent, was "in S. E. S. W. Sec. 2, Tp. 83, R. 24—15 acres," while the land specified in the certificate and conveyed by the deed was "15 acres in S. side S. E. quarter of. the S. W. quarter of Sec. 2, Tp. 83, R. 24." The statute in force when the sale was made provided that in the sale of lands for taxes, where the part sold was less than any parcel, if it exceeded the one-half, it should be taken from the east side thereof, dividing it by a line running north and south; and if the portion sold was less than one-half, it should be taken from the southeast corner, in a square form as near as practicable. Revision, Sec. 766. The evidence shows, as above stated, that aside from the forty acres redeemed the plaintiff was the owner of twenty-four acres in the S. E. S. W. quarter of that section. Certain it is, that there is nothing in the record to show in what part of the forty the fifteen acres was situated. The section of the statute above quoted was enacted for the purpose of briefly and definitely specifying the particular land sold for taxes out of a larger parcel, when the purchaser would take less than the whole and pay all the taxes delinquent. Whether, in a case like this, where a small portion of a larger parcel is listed and taxed, it shall be presumed to be situated in that part of the larger parcel as specified by the statute, we need not here determine. For, in this case it is clear that the land conveyed in the deed has no necessary identity with that listed and taxed, and there is no evidence *aliunde* showing such identity. The only evidence we have on the part of defendants, of what land was sold by the treasurer, is his certificate of sale and the tax deed; and, as above remarked, the description contained in these, is different from that of the land which was delinquent. If the tax deed is conclusive of the land sold, it would follow that there was no sale in fact of the delinquent land; and we have held that in such case the owner is not concluded by the

*1 TAX DEED: description: evidence.*

tax deed nor any recital therein.  *Case v. Albee*, 28 Iowa, 277. That a sale in fact is one of the essentials in order to pass the title by a treasurer's deed has also been held by this court. *McCready v. Sexton & Son*, 29 Iowa, 356.

Whether if the sale and conveyance were of the same described land as that listed, taxed and delinquent, the purchaser might not by proof *aliunde* show what land was embraced in his conveyance, we need not here determine.  All that we do now decide on this point is, that when the certificate of sale and tax deed describe land, having no necessary identity with that which has been taxed and is delinquent, they do not of themselves constitute sufficient evidence of a sale to uphold the tax deed but negative it.

The further complications of this case abundantly vindicate the wisdom of this holding.  Here, the plaintiff was the owner of twenty-four acres in that forty; fifteen acres only have been listed or taxed.  Which fifteen acres, out of the twenty-four acres, would pass by a sale under the description on the tax list, would be a difficult question to determine.  But if it be conceded that the tax deed is not conclusive upon the tax purchaser as to the sale of the land described in such deed, and it be also conceded that the testimony of the treasurer be correct, " that undoubtedly it was sold by the description as shown in the tax list," and also that in fact the record of sales so shows, still the tax purchaser will be in no better position.

The description in the tax list and record of sales is as follows: " In S. E. S. W. 2, 83, 24, 15 acres."  This description is void for uncertainty.  It will be remembered, that the evidence shows that the plaintiff and its grantor were the successive owners of 64 acres in that quarter section.  Forty acres had been sold in one parcel and that had been redeemed, leaving twenty-four acres yet unsold for taxes.  Out of this twenty-four acres, fifteen acres were sold for taxes under the description above, there being no designation what fifteen acres were sold, nor in what part of the quarter section it was situated.  In *Bosworth v. Fahrenholz*, 3 Iowa, 84, a description in a deed for " forty feet of lot No. 2, in block No. 2, Davenport," was held void for uncertainty.  In *Lafferty's*

*Lessee v. Byers*, 5 Ohio, 458, a description of "73 acres in an original 170 acre tract," was held insufficient. In *Lessee of Massie v. Long et al.*, 2 Ohio, 287," one acre of out-lot No. 43," was held to be too vague and indefinite. In *Ronkendorff v. Taylor's Lessee*, 4 Pet., 349, "one-half of lot No. 4, in square No. 491," without designating which half, was held void. In *Treon's Lessee v. Emerick*, 6 Ohio, 391, "sixty acres, part of north half, section 13," was held insufficient. See, also, *Perkins v. Dibble*, 10 Ohio, 433. In *Winkler v. Higgins*, 9 Ohio State., 599, where the owner held a title to a "tract of land in the county of Scioto, to-wit: One-third part of French Grant, lot sixty-six, containing seventy-two and one-half acres," and the tax certificate contained the following description. "Part lot 66, acres $72\frac{1}{2}$," was held void for uncertainty. In *Ballance v. Forsyth*, 13 How., 18, a sale of an "acre off the east side" of a fractional quarter was held void. In *Raymond's Lessee v. Longworth*, 14 How., 76, the land was listed as "five acres in section 24," not specifying what part of the section, was held void for uncertainty. In *Shackelford v. Baily*, 35 Ill., 385, a sheriff's deed purporting to convey "thirty-four acres of the southeast quarter of the southeast quarter, of sec. 2, tp., 24, north of range 5, west 5 P. M.," was held to be void for uncertainty. See, also, to the same effect, *Head v. James*, 13 Wis., 718; *Bidwell v. Colenso*, 11 Minn., 38, and many other cases.

These cases prove abundantly that if the conveyance had been in accordance with the tax list, no title would pass. There is no evidence tending to identify the fifteen acres, even if such proof would be competent. It follows that no right whatever was acquired by the purchaser either under the sale or deed.

Having found that there was no sale of the land described in and hence that no title was conveyed by the deed, and that the description even in the tax list is too vague and uncertain to authorize a sale, which, unaided will pass any title, it follows that the conveyance by the grantee in the tax deed could pass no title to his grantee; and it becomes unnecessary therefore to inquire whether there was a redemption or not. The

plaintiff having tendered a sum sufficient to redeem, and that being shown by the evidence to be the sum of $36.98, the defendant, Scott, or his grantee Wright, will be entitled to that amount. The plaintiff is entitled to judgment declaring the tax deed null and void, and removing said deed and that made to Wright as a cloud upon its title.

REVERSED.

ON REHEARING.

DAY, J.—Upon the petition of defendants a rehearing was granted in this cause. At the June Term, 1876, the plaintiff replied to the petition, and the cause was again submitted.

The principal question in this case is whether the assessment and sale were by a description sufficiently certain and definite to authorize the execution of the deed, under which defendant claims title to the land. It is admitted that the description in the deed is definite and certain. The defendants insist that the deed is authorized by the assessment and sale.

The land was sold in 1870, for the delinquent taxes of 1869. It is described in the tax list as follows: "Owner's name, John I. Blair, in S. E. S. W. Sec. 2, tp. 83, range 24, 15 acres. The treasurer who conducted the tax sale testifies that the land was sold by the description as shown in the tax list. The deed conveys 15 acres in the south side, S. E. quarter of the S. W. quarter of said section. If it appears from the evidence and the pleadings that John I. Blair, owned only 15 acres in the S. E. S. W. section 2, and that these 15 acres were on the south side of said forty acres, then the assessment and sale of 15 acres owned by John I. Blair in said forty, was an assessment and sale in fact of 15 acres in the south side of said forty, and authorized the execution of the deed. Let us see whether it appears from the pleadings and proofs that John I. Blair, at the time of the assessment, owned but 15 acres in the forty in question, and that on the south side.

This action was commenced on the 4th day of November, 1873.

The petition alleges that the plaintiff is now (on the 4th of

November, 1873, when the action was commenced), and has been since about the 24th day of July, A. D. 1871, the owner of the land in the S. E. S. W. quarter of section two, which lies south of the Cedar Rapids & Missouri River Railroad, passing through the said quarter quarter section, containing about twenty acres, and the remainder of the quarter quarter section above mentioned is occupied by the Cedar Rapids & Missouri River Railroad Company with its railroad track and right of way, and the town site of the town of Ames, which embraces all of said tract north of the railroad.

The defendant, Scott, testified: " I am acquainted with the location of the land and have been familiar with it for about ten years; the remainder of the forty acres in which this tract is located is laid off as the town plat and built up as the town of Ames, and used for the depot and right of way of the railroad; the railroad runs on the north line of the fifteen acres." These allegations in the petition and this testimony of Scott contain all that there is upon the subject of the ownership of the forty in question. Now, suppose everything be conceded for these allegations and this testimony, that can by possibility be claimed for them; suppose it be admitted that in November, 1873, when this action was commenced, and in April, 1874, when, Scott testified, the whole of the forty acres in question, except fifteen acres in the south side, was laid off in the town of Ames, and occupied by the track of the Cedar Rapids & Missouri River Railroad; what do these facts prove? Simply that in 1873 or in 1874, Blair could not have owned any portion of this forty except fifteen acres in the south side. They prove nothing as to the ownership of the forty in 1869, when the assessment was made, or in 1870, when the sale was made. This court cannot take judicial notice of the time when the town of Ames was laid out, and the Cedar Rapids & Missouri River Railroad was constructed through this land. For aught that appears when this land was assessed John I. Blair owned the whole forty, or none of it. It does not, therefore, appear, that an assessment of fifteen acres owned by John I. Blair, in the S. E. S. W. Sec. 2, refers to any particular portion of the forty. The assessment and

sale were indefinite, and they conferred no authority to deed fifteen acres in the south side of S. E. S. W. Sec. 2.

II. It is claimed, however, that the deed makes out at least a *prima facie* case, and casts the whole burden of proof 3. ——: ——: upon the party assailing it, and that he must ^(burden of proof.) affirmatively establish the insufficiency of the assessment and sale. It is true the tax deed does make out a *prima facie* case. The party claiming under a tax deed needs do no more in the first instance, than produce his deed, duly executed; he needs not prove an assessment and a sale. The burden of proof is upon the party defending against the tax deed, to prove the want of a legal assessment and sale; but when the assessment was introduced in this case it showed that the land which the defendant Scott claims passed to him under his purchase, and which was deeded to him as fifteen acres in the south side of the forty, was assessed only as fifteen acres owned by John I. Blair, in the forty. This being the only assessment made, the proof of it established, *prima facie*, that there was no assessment of the land described in the tax deed, and shifted to the party claiming under the deed, the burden of proving that the fifteen acres assessed was the same as that deeded.

If the deed had been simply such as the assessment and sale authorized, it would have described the land as the fifteen acres in the S. E. S. W. Sec. 2, owned in 1869 by John I. Blair. It is very plain that it would be incumbent upon any one, asserting a claim to a specific fifteen acres of land under such a deed, to prove that the land he claims was owned in 1869 by John I. Blair, and that it was conveyed by the designation in the deed.

It seems to us to be equally clear that it is not competent for the treasurer, by simply putting an unauthorized description in the tax deed, to relieve the holder of the tax title of a burden which otherwise would be cast upon him, and throw upon the original owner a burden which otherwise he would not have to bear. We feel satisfied that when an assessment was introduced, which could refer to no specific property unless aided by extrinsic proof, it was incumbent upon the party

claiming a right under such assessment, to furnish the extrinsic proof necessary to establish its validity.

It follows that, whether or not the evidence warrants the affirmative finding that plaintiff owned twenty-four acres in the forty in question, the conclusion reached in the foregoing opinion is right, and must be adhered to. The judgment of the court below is

REVERSED.