212 P.2d 417

**BALTZLEY v. LUJAN et al.**

**BALTZLEY v. VIGIL.**

No. 5179.

Supreme Court of New Mexico.

Dec. 8, 1949.

Fletcher A. Catron, Santa Fe, for appellant.

M. W. Hamilton, Santa Fe, for appellees.

LUJAN, Justice.

This is an appeal by the plaintiff (appellant), from a judgment rendered against her by the District Court of San Miguel County in two distinct causes which were consolidated for trial because they involved the same property. The parties occupy the same position in this court as in the trial court, and for convenience will be referred to as the plaintiff and the defendant.

The first case, No. 12881, was instituted by the plaintiff on October 21, 1941, against Marcos Lujan, the original patentee and Ramon Vigil, the present defendant. This was a suit to quiet title. However, before this case was filed, Marcos Lujan, on June 9, 1941, had conveyed his interest in said

property to Ramon Vigil, and the taxes for the years 1931 to 1940, inclusive, except for the year 1939 had been paid by Marcos Lujan. Thereafter, on June 22, 1943, Lujan died. The second suit No. 13566, in ejectment, was filed on May 11, 1945, against the defendant Ramon Vigil.

The material facts are substantially as follows:

On October 12, 1900, the United States Government issued a patent to Marcos Lujan for the following property: The North half of the Southwest quarter and the South half of the Northwest quarter of Section four in Township sixteen North of Range *thirteen* East of the New Mexico Meridian. For the years 1931 to 1938 inclusive, the assessor of San Miguel County assessed the following property in the name of Marcos Lujan: N½SW¼, S½ NW¼, Section 4, Township 16, Range *18* School District No. 97, East Pecos.

This property, as above assessed, was sold for non-payment of taxes for the years 1931, 1932 and 1934, and Tax Sale Certificates Nos. 5913, 5928 and 7709 were issued accordingly by the county treasurer. Each of these certificates contained the same description as that appearing on the tax rolls. On March 31, 1938, while the property was still assessed as in Range *18* the county treasurer executed and delivered to the State his Tax Deed No. 1774, describing the property as lying in Range *13* East,

thereby disregarding the fact that the tax rolls as well as the tax sale certificates described the land as being in Range *18* East. Although no legal action had been taken to change the tax rolls and the tax sale certificates to conform with the tax deed, the State Tax Commission on August 8, 1939, executed and delivered to the plaintiff its deed for this property describing it as lying in Range *13* East, notwithstanding it still stood on the tax rolls as being in Range *18* East. This is the first deed upon which the plaintiff bases her title to the property. On December 10, 1937, the property was again sold for the delinquent taxes of 1936. The property was still assessed and appeared on the tax rolls as in Range *18*, for that year, although some time thereafter an attempted correction was made by writing the figure "3" over the figure "8" with an indelible or blue pencil, thereby making the Range read *"13E"* instead of Range *"18E"* as it originally appeared on the tax rolls for the years 1931 to 1936, inclusive. Pursuant to the sale of the property as it appeared on the tax rolls, Tax Sale Certificate No. 1240 was issued by the county treasurer describing it as lying in Range *13E*. The record does not disclose whether this attempted correction was made before or after the issuance of the tax sale certificate, nor by whom it was made; nor that a new sale of the property was made, after the correction in the description. On Feb-

ruary 20, 1945, the county treasurer issued Tax Deed No. 2295 to the State, therein describing the property as being in Range 13E. On March 17, 1945, the State Tax Commission executed and delivered to the plaintiff its deed therein referring to the property as lying in Range 13E. This is the second deed upon which plaintiff claims title. During the year 1941, the defendant appeared before the county treasurer for the purpose of paying his taxes and upon examination of the tax rolls it was discovered that his land was not assessed, thereupon the treasurer placed it on the tax rolls for the years 1931 to 1938 inclusive and 1940, with the notation "Treasurer's Assessment of Omitted Property." The defendant then paid the taxes due for the years 1931 to 1938 inclusive and was issued Tax Receipt No. D1143 dated May 29, 1941. On July 17, 1943, the defendant paid the taxes for the year 1941 and was issued Tax Receipt No. D1522.

The plaintiff's first proposition here, as to her first deed, is that the description of the property in question as it appears on the tax rolls for the years 1931 to 1935, inclusive, and particularly for the years 1931, 1932 and 1935, aided by extrinsic evidence was sufficient to identify the land as that belonging to Marcos Lujan, and cites several New Mexico cases in support thereof, but we do not believe they are in point in this case. In those cases we held that the description, though on its face uncertain, may be aided by extrinsic evidence, which, by means of data furnished by the description itself, will resolve the uncertainty, but we have a different situation here.

The facts as disclosed in the record show that the description on the tax rolls and in the tax sale certificates refer to an entirely different tract of land from that contained in the tax deed. The county treasurer sold the property as it stood on the tax rolls for the non-payment of delinquent taxes and upon such sale issued tax sale certificates bearing that description, but for some unexplained reason he issued a tax deed to the State describing the land as lying in a different range, contrary to Section 76-717, 1941 Compilation, which provides, in part, as follows:

"* * * County treasurers shall issue a deed to the state of New Mexico, in the form as in this act provided, and shall execute separate deeds *for the property described in each tax sale certificate* sold to the state and not assigned * * *." (Emphasis ours.)

Since the mandatory provisions of the statute were not complied with, the county treasurer was without authority to execute and deliver a deed which did not describe the same land as that assessed and sold at the delinquent tax sale. Consequently the tax deed being void the State acquired no rights thereunder, and the

plaintiff could claim no better title than the State had. The recitals in the tax deed were false, because they did not describe the land sold as that appearing on the tax rolls and upon which the tax sale certificates were based. Heron v. Ramsey, 45 N.M. 483, 117 P.2d 242; Lawson v. Hedges, 37 N.M. 499, 24 P.2d 742; Jones v. Dils, 18 W.Va. 759; Blair Town Lot & Land Co. v. Scott, 44 Iowa 143; Black on Tax Titles, Sections 112, 405; Gilbert v. Conservative Loan & Trust Co., 138 Okl. 1, 280 P. 278, 67 A.L.R. 885; Patrick v. Davis, 15 Ark. 363; Terwilleger v. Bridges, 192 Okl. 642, 138 P.2d 79; Sears v. Murdock, 59 Or. 211, 117 P. 305.

The assessment of property for taxation is one of the essential steps leading up to a sale for taxes. If an assessment is void it follows inevitably that the sale based upon such assessment is likewise void. The description appearing on the tax rolls as well as on the tax sale certificates could not be supplemented or cured by the description contained in the tax deed, for that would be to base the deed not upon the sale and anterior proceedings, as the law requires for its validity, but upon evidence aliunde, which, whether correct or not, could not authorize the officer of the law executing the deed in the exercise of a naked power to make a valid execution of it so as to pass title. Bull v. Martinez, 43 N.M. 113, 86 P.2d 599; Manby v. Voorhees, 27 N.M. 511, 203 P. 543; Blackwell on Tax Titles, Sections 874 and 875; Boon v. Simmons, 88 Va. 259, 13 S.E. 439; Cotton v. White, 131 Ark. 273, 199 S.W. 116. The same rule must necessarily obtain with respect to a tax deed passing title from the State to a third party.

The plaintiff next urges as to her second deed, that, (1) the burden rested on the defendant to establish by substantial evidence that the correction made in the description on the 1936 tax roll was made illegally and constituted a fraud against Marcos Lujan or the defendant; (2) that there is no evidence in the record establishing such illegality or fraud, and in the absence of proof it must be assumed that the correction was made regularly and legally; and (3) that even if it should be assumed that there was any irregularity in the making of the correction, it was not a defense available under the provisions of Section 76-726, 1941 Compilation.

■ This being a suit to quiet title, it was incumbent upon the plaintiff to establish his title before he could succeed. There could be no burden imposed on the defendant until the plaintiff had established a title that could be quieted. Union Land & Grazing Co. v. Arce, 21 N.M. 115, 152 P. 1143; Abeyta v. Tafoya, 26 N.M. 346, 192 P. 481; Wall v. Magnes, 17 Colo. 476, 30 P. 56; McCauley v. Ohenstein, 44 Neb. 89, 62 N.W. 232. The plaintiff introduced this second deed and rested. The defend-

ant objected to it on the ground that it was not the same property as that appearing on the tax roll and which was sold for delinquent taxes. Section 76-720 of 1941 Compilation provides that a tax deed shall be prima facie evidence of certain facts, among which are: "That the property had been listed and assessed at the time and in the manner required by law; that the property was sold for taxes as stated in the deed; that the sale was conducted in the manner required by law."

The evidence was sufficient, however, to overcome the prima facie case established by the deed.

The deed in question was based upon a tax sale certificate issued pursuant to a sale of property described in the tax roll as being in Range 18 East. It was prepared on December 10, 1939, but not witnessed until February 19, 1945, five years thereafter, with a notation "at the request of the Attorney General." In this connection, the Treasurer of San Miguel County, testified:

"By the court:

"Q. Examine Tax Sale Certificate No. 1240. When was that tax sale certificate signed by the treasurer? A. February 19, 1945.

"Q. It was signed then? A. Yes, sir.

"Q. It has been testified it was signed at the request of the Attorney General? A. Yes, sir.

"Q. Who signed this certificate? A. Mrs. Myles Sweeney. I have the letter as to that."

The tax rolls in the office of the County Treasurer show that the land was described for the years 1931 to 1936, inclusive, as being in Range 18 East and not in Range 13 East, and that there was an unauthorized attempt made to alter the tax roll for the year 1936 by writing the figure "3" over the figure "8", so as to make it appear that the land was in fact in Range "13" East instead of "18" East.

The trial court found:

"11. That at the date of the issuance of said Tax Deed No. 1774 from the County Treasurer of San Miguel County to the State of New Mexico, there appeared on the tax rolls of said county taxes assessed to said Marcos Lujan for the years 1933 to 1935 and 1936, the description of said property for said years being identical with the original description for the years 1931, 1932 and 1934, describing the property as being located in Township 16, Range 18.

"12. That there appeared on the tax rolls for the year 1936 a purported attempt to correct the description of said property on said tax rolls from Range 18 to Range 13, by a penciled notation upon said rolls.

"16. That thereafter, and on the 17th day of March, 1945, the State Tax Commission of the State of New Mexico made, executed and delivered to the plaintiff here-

in its deed referring to property in Township 16, Range 13, notwithstanding the fact that the penciled notation correcting the said description for the year 1936 shows conclusively that no correction of said tax rolls was made under any provision of law authorizing corrections thereof."

It is interesting to observe that after this alteration had been made the land was again assessed and appeared on the tax rolls for the years 1937 and 1938 as in Range 18 East. There is nothing to show how or why the correction was made on the tax rolls; whether it was made before or after the issuance of the tax sale certificate which was signed five years thereafter; there are no initials or notation relative to the alleged correction.

The court found:

"13. That it was unquestionably apparent, from an examination of the attempted change upon said tax rolls by a penciled notation thereon, as aforesaid, that the same was not done in accordance with the provisions of law relative to corrections and changes to be made upon tax rolls by the proper officials, and that no evidence was submitted in this cause showing that said change was made in the manner provided by law.

"14. That notwithstanding the failure to correct said tax rolls, if any correction were proper, in the manner provided by law, said property was attemptedly sold by the County Treasurer of San Miguel County by reason of such delinquency for the year 1936 on the 10th day of December, 1937, and pursuant to said sale. Tax Sale Certificate Number 1240 was issued describing said property as located in Township 16, Range 13; notwithstanding the fact that no legal correction, if any correction was proper, had been made in the tax rolls of said County.

"15. That thereafter, and on the 20th day of February, 1945, the County Treasurer of San Miguel County issued Tax Deed No. 2295 of the State of New Mexico, said tax deed describing said property as Township 16, Range 13, notwithstanding the fact that no correction had been made as required by law.

"18. That the tax deed issued the plaintiff under date of March 17, 1945 is based upon a description upon the tax rolls referring to property in Township 16 Range 18, but said tax deed described the property as being located in Township 16, Range 13, supposedly by reason of a purported penciled correction of the tax rolls, which was made contrary to the provisions of law relative to correction of tax rolls by county officials, or otherwise.

"19. That no evidence has been submitted on the trial of this cause showing that any correction of the tax rolls of said county has been made in accordance with the provisions of law relative thereto, nor

has any evidence been submitted showing a new sale of said property was made after any correction of said description as provided by Section 76-703, New Mexico Statutes 1941 Annotated."

If the alleged correction was made by the treasurer or his deputies, it was ultra vires, and void. Section 76-306, 1941 Compilation provides, in part, as follows:

"The tax roll when delivered to the county treasurer, properly verified by the affidavit of the county assessor and properly certified by the county commissioners, as required by law, shall constitute his authority to collect the taxes therein set forth * * * amounts to be paid as taxes as shown by said assessment roll shall not be altered, reduced or·in any manner changed, except by direction of the district or Supreme Court; but this prohibition shall not extend to the correction of *obvious* clerical errors in name, description of property or computation of amount of taxes. If the treasurer shall discover any errors of other kinds in said assessment roll by which any injustice would be done to any taxpayer, it shall be his duty to report the same to the district attorney; * * * such complaint, filed by the district attorney, shall be acted upon by the district court without cost to the taxpayer injuriously affected. * * * If the court finds that real property has been *incorrectly assessed* for taxation, due to an error or *clerical mistake* in description, and it can be reasonably ascertained, from said assessment or other information, the property that was intended to be assessed, *the court may order such assessment corrected.*" (Emphasis ours.)

 Manifestly, if fundamental error arises in the description of the property by the assessing authorities, the power to correct such error lies in the district court by proper proceedings and is not one authorized to be made by the county treasurer. An adequate and proper description is an essential of taxation. This does not mean the description must be perfect. Even though on its face it may appear to be uncertain, if through the aid of extrinsic evidence, which, from data afforded by the description itself, the uncertainty may be resolved, it will suffice. Eaves v. Lowe, 35 N.M. 610, 5 P.2d 525; Pace v. Wight, 25 N.M. 276, 181 P. 430.

██ That "obvious" clerical errors, as used in the statute, means something which is apparent by an examination of the assessment rolls needing no evidence to make it clearer, cannot be doubted. It is synonymous with evident, visible and plain to the understanding from an examination of the tax rolls or at most only requiring a mathematical calculation to demonstrate it, Hermance v. Board of Sup'rs of Ulster County, 71 N.Y. 481; People ex rel. Chamberlain v. Forrest, 96 N.Y. 544;

Buchanan v. West Kentucky Coal Co., 218 Ky. 259, 291 S.W. 32, 33, 51 A.L.R. 281; Patrick v. Davis, supra.

We are of the opinion, and so hold that the correction appearing on the tax roll for the year 1936 was unauthorized and that the treasurer's deed to the State based upon the sale of the property in question, as corrected, was void; and that the plaintiff did not acquire title to the land through her deeds as the State had no title to convey.

It will serve no good purpose to quote the evidence on this point; suffice it to say that we have carefully read the record, which is short, to ascertain whether there is sufficient and substantial evidence to support the court's findings. In this case we are bound by the findings of the court and they will not be disturbed by us, being supported by substantial evidence.

Plaintiff under Point III claims that, "Assuming that the correction shown to have been made on the 1936 tax roll was irregularly or illegally made, that defense to the title of plaintiff, derived through her deeds from the State Tax Commission, was barred by the provisions of Section 76-727, New Mexico Statutes 1941 Annotated." (Emphasis ours)

The section above referred to provides:

"Any actions to test the validity of any proceedings * * * whereby is sought to be shown any irregularity of any officer, or defect or neglect thereof * * * relating to the assessment and collection of delinquent taxes, or proceedings whereby it is sought to avoid any sale * * * shall be commenced within two (2) years from the date of sale, and not afterward."

It is difficult to see how the provisions of this statute could avail the plaintiff. There is nothing for the statute to operate upon; nothing for it to run against; nothing to set it in motion. There was no tax sale made of this property to the state and the deed alone did not start the statute of limitations running. Dingey v. Paxton, 60 Miss. 1038; Jeffrey v. Brokaw, 35 Iowa 505; Baker v. Kelley, 11 Minn. 480; Groesbeck v. Seeley, 13 Mich. 329.

The last point relied upon for a reversal needs no consideration in view of the conclusion reached.

The judgment is affirmed.

It is so ordered.

BRICE, C. J., McGHEE, and COMPTON, JJ., concur.

SADLER, J., concurs in the result.